64 P.3d 1253 (2003)
STATE of Washington, Respondent,
v.
Morning Laray MILLS, Appellant.
No. 49883-5-I.
Court of Appeals of Washington, Division 1.
March 10, 2003.
Jason B. Saunders, Washington Appellate Project, Seattle, WA, for Appellant.
Julie Dee Cook, King County Deputy Pros. Atty., Seattle, WA, for Respondent.

PUBLISHED IN PART
AGID, J.
The State charged Morning Mills with felony harassment. The crime of misdemeanor harassment is elevated to a felony when a jury finds the defendant threatened to kill his or her victim. In this case, the to convict instruction contained all the elements of harassment, as defined by statute. A special verdict instruction and accompanying form were used to instruct the jury to decide, beyond a reasonable doubt, whether or not Mills threatened to kill her victim. After the jury found her guilty of harassment, it also found that she had threatened to kill the victim. She was therefore convicted of the felony. Mills contends this was error because the trial court omitted an element of *1254 the crime from the to convict instruction. We conclude the trial court properly instructed the jury when it used a special verdict form to determine whether the jury found Mills guilty of the factor that elevated the crime to a felony. The instructions set forth all of the elements of the crime charged and specifically required that both the crime of harassment and the enhancing factor be found beyond a reasonable doubt by a unanimous jury. Mills also contends the evidence was insufficient to prove her guilt. Because there was substantial evidence to support the conviction, we affirm.

FACTS
Billy Edwards has known Morning Mills and her family for years. Mills and Edwards were involved in a romantic relationship and had a child. When Mills' relationship with Edwards later deteriorated, they stopped dating and Edwards began dating other women. On one occasion, Mills stabbed one of Edwards' former girlfriends and served 33 days in jail. Mills and Edwards stay in contact because of their child.
In June 1999, Edwards began a romantic relationship with Jonnika Lawrence, and a year later they moved in together. On June 7, 2000, at approximately 1:24 a.m., Lawrence and Edwards were asleep when the telephone rang. Lawrence answered it and recognized Mills on the other end of the line. Mills told her, "I told you about messing with him." The defendant then told Jonnika to "shut up" and "look at your Altima, go look at your Altima." Mills then hung up.
Hearing Lawrence on the phone, Edwards awoke and asked who called. Lawrence was frightened and upset by the call and talked to Edwards about it. Lawrence then went outside and saw that her car's front window was shattered and the back window was completely destroyed. She found a large rock on the backseat. Lawrence returned to the house and called the police. While they were waiting for the police to arrive, Edwards told Lawrence that Mills had assaulted one of his former girlfriends with a knife.
After talking to the police, Lawrence checked her phone messages and discovered a message left at 3:24 a.m.
Bitch, you fuckin' bitch. I'm tired of playin' around with you. Watch, I'm gonna get a year tops cause I murder your ass. I stabbed somebody for messing with Bill, I got 33 days. Now watch what I'm gonna get for murder. Bitch, you think I'm fuckin' playin'. You get the motherfucker to my house. Bitch, you didn't wanna call me back. Yeah, I'm a I'm a show you what I'm a gonna do. I'm a kill you suicide, you need to know who the fuck I am. I'm gonna kill you in the back of your head, I'm going to walk ... slit your fuckin' neck, you dumb ass bitch. That's why I just found out what apartment you live in. Now I'm coming over now.
Lawrence was extremely frightened by the message and believed Mills would carry out her threat. Both Lawrence and Edwards listened to the message and thought they recognized the voice as Mills'. Lawrence believed the caller was Mills because of what the message said.
On June 3, 2000, Mills left a phone message with her phone number, telling Lawrence to call her "to discuss ... our friend Billy Edwards." Both Lawrence and Edwards listened to this message and recognized Mills' voice as the person who made the call. Lawrence did not return the call.
The State charged Mills with second degree malicious mischief for the damage to the car, harassment for threatening to cause bodily injury to Lawrence, and felony harassment for threatening to kill her. At trial, Lawrence testified that she was unable to positively identify Mills' voice on the 3:24 a.m. call on June 7, but she believed Mills made it for several reasons. During the message the caller spoke in the first person, referred to the June 3, 2000 message by asking her why she had not returned her call to discuss Edwards, talked about stabbing another woman, and told Lawrence that she knew where she lived. Lawrence could not think of any other person who could have made that phone call.
Kent Police Detective David Trogden testified that after listening to the telephone messages *1255 and speaking with Lawrence and Edwards, he telephoned Mills using the number she left on the June 3 message. The person who answered the phone said she was Morning Mills and confirmed her birth date, but she denied leaving a threatening message. She also told Detective Trogden that she served 33 days for stabbing someone in the head for "messing with" Edwards, and Trogden confirmed that Mills had done so.
The jury found Mills guilty, and Mills appeals.

DISCUSSION
I. To Convict Instruction
Mills contends she was deprived of due process because the to convict jury instruction for felony harassment omitted the "threat to kill" element. The State argues that (1) she waived her right to appeal under RAP 2.5(a) by failing to object to the instruction below and (2) in any case the trial court instructed the jury on all of the crime's elements. Failure to instruct the jury on every element of the crime charged is an error of constitutional magnitude that may be raised for the first time on appeal.[1] We review a challenged jury instruction de novo.[2] Jury instructions are to be read as a whole, and each one is read in the context of all others given.[3] Instructions are sufficient if they properly inform jurors of the applicable law, are not misleading, and permit each party to argue his or her theory of the case.[4]
At the conclusion of the testimony, the trial court instructed the jury on the law. For count 1, felony harassment, the court instructed the jury that in order to find Mills guilty, each of the following elements must be proved beyond a reasonable doubt (instruction 8):
(1) That on or about June 7, 2000, the defendant knowingly threatened:
... to cause bodily injury immediately or in the near future to Jonnika Lawrence...[;]
. . . .
(2) That the words or conduct of the defendant placed Jonnika Lawrence in reasonable fear that the threat would be carried out;
(3) That the defendant acted without lawful authority; and
(4) That the acts occurred in the County of King.[5]
The court also gave the jury the following special verdict instruction (instruction 9), which read:
If you find the defendant guilty of harassment, as charged in count 1, you will complete the special verdict form provided to you for this purpose. Since this is a criminal case, all twelve of you must agree on the answer to the special verdict. If you find the defendant not guilty of harassment, do not use the special verdict form.
If you find that the State has proved beyond a reasonable doubt that the defendant's threat to cause bodily harm was a threat to kill the person threatened or another person, it will be your duty to answer the special verdict "yes", as to count I.
On the other hand, if, after weighing all of the evidence, you have a reasonable doubt that the defendant's threat to cause bodily harm was a threat to kill the person threatened or another person, it will be your duty to answer the special verdict "no", as to count 1.
And the court gave the jury an accompanying special verdict form for count 1, which read: *1256 THIS SPECIAL VERDICT IS TO BE ANSWERED ONLY IF THE JURY FINDS THE DEFENDANT GUILTY OF HARASSMENT.
We, the jury, return a special verdict by answering as follows, as to Count 1:
Did the defendant's threat to cause bodily harm consist of a threat to kill the person threatened or another person?
Mills argues that omitting the "threat to kill" element from the to convict instruction was fatal and requires reversal. The State asserts there was no error because the court's instructions included a special verdict instruction and accompanying form including that element and instructions 8 and 9 contained all of the crime's elements. We agree.
As a general rule, the to convict instruction need not specify every element of the charged crime in every case.[6] In State v. Emmanuel,[7] the State charged the defendant with bribery, and the court gave a detailed to convict instruction including all but one of the crime's elements. The Supreme Court held that this instruction was deficient, reasoning that by undertaking to specifically tell the jury that they could convict the defendant if they found that four elements of the crime had been proven, the judge provided "a yardstick by which the jury were [sic] to measure the evidence in determining appellant's guilt or innocence of the crime charged."[8] The Emmanuel court stated that the instruction purported to include all the elements, and the jury was not required to search other instructions to see if another element alleged in the information should have been added.[9] Thus, if the to convict instruction acts as a yardstick for measuring the evidence, it must include a complete summation of the law.[10] Where a trial court has not undertaken to provide a yardstick to the jury, the instructions are to be read as a whole and each instruction is to be read in the context of all the others given.[11]
The State relies on State v. Oster.[12] There, the Supreme Court had to determine the adequacy of a to convict instruction that omitted an element of the charged crime. Oster was charged with felony violation of a domestic violence protective order. Like the crime charged here, Oster's charge was a misdemeanor unless the jury also found an enhancing factor that elevated the crime to a felony. In Oster, the State charged that he had two prior convictions for the same crime, one of the statutory felony factors. Like the court here, the trial court in Oster used bifurcated instructions and a special verdict form.[13] The Supreme Court concluded it was not error to instruct the jury separately and by special verdict form on prior criminal history because the instructions clearly set forth all the elements of the crime and the jury did not have to search the other instructions for missing elements.[14] "But again, no searching was necessary here; everything the jury was required to decide was clearly laid out for the jury to decide."[15]
Oster's approach to evaluating jury instructions logically applies here as well because the crime charged, felony harassment, has the same statutory structure as the crime at issue in Oster, felony violation of a domestic violence no contact order.[16] The jury must first determine whether the defendant violated a valid no contact order. If so, he or she is guilty of a misdemeanor. The crime is elevated to a felony when the jury *1257 also finds the defendant has two or more prior convictions for the same crime.[17] Similarly, harassment is a misdemeanor which is elevated to a felony when the jury finds the defendant threatened to kill the victim.[18] Neither harassment nor violation of a domestic violence no contact order is a separate, distinct crime with its own separate statutes like most crimes are.[19] Rather, both statutes define a misdemeanor crime and then provide grounds for elevating the crime to a felony if the jury finds a separate element beyond a reasonable doubt.
The to convict instruction here did not purport to contain all of the crime's elements. Rather, the trial court followed the Washington pattern jury instructions[20] and separated the misdemeanor and felony into two instructions with a special verdict form. The defense argues the trial court should have given an instruction on felony harassment which characterized misdemeanor harassment as a lesser included offense. But this approach would be more confusing to the jury than the WPIC approach approved in Oster because its construction would be unduly awkward.
With murder, robbery, assault and other traditionally defined crimes, the jury's failure to unanimously find any one of the elements requires it to acquit on the greater crime. But with crimes structured like harassment and violation of a no contact order, there is only one specific element that distinguishes the greater, felony crime from the lesser, misdemeanor crime. Constructing a single instruction on the lesser included model under these circumstances has great potential to confuse the jury and result in erroneous verdicts. Indeed, the statutory structure of these crimes is more akin to enhancements like committing a crime while in possession of a firearm which the jury regularly decides by special verdict.[21] The defendant benefits from having the instructions bifurcated because the special verdict instruction safeguards him or her from being mistakenly convicted of the elevated crime because of a confusing instruction.
As stated, all the pertinent law need not be incorporated in one instruction.[22] It is only when court leads the jury to assume that the to convict instruction is itself a complete statement of the elements of the crime charged that it must in fact include them. Here, the trial court put the special verdict felony instruction right after the to convict misdemeanor harassment instruction. Because of this, it is clear that the court did not intend to provide a "yardstick" with its to convict instruction. The instructions were to be read as a whole and each one read in the context of all others.[23]
*1258 In addition, there is no danger that this approach confused the jury. Instruction 1 informed the jury to consider the instructions as a whole and not place undue emphasis on any particular instruction or part of an instruction. Instruction 3 told them that each element was at issue, and the burden of proving each element beyond a reasonable doubt rested with the State. And instructions 8 and 9, when read together, supply all of the crime's elements. The elements were not scattered throughout the court's 22 instructions. Rather, they were clearly listed in two instructions placed one after the other, as contemplated by the WPIC.[24] As a result of the instruction pattern the court used, the defendant received a benefit as well. The jury was required to conclude not once but twice that the State had met its burden beyond a reasonable doubt. Accordingly, we conclude there is no constitutional infirmity.
The remainder of this opinion has no precedential value. Therefore, it will not be published but has been filed for public record. See RCW 2.06.040; CAR 14.
WE CONCUR: COLEMAN, ELLINGTON, JJ.
NOTES
[1] State v. DeRyke, 110 Wash.App. 815, 819, 41 P.3d 1225 (2002) (citing State v. Aumick, 126 Wash.2d 422, 429-30, 894 P.2d 1325 (1995)).
[2] Id. (citing State v. Pirtle, 127 Wash.2d 628, 656, 904 P.2d 245 (1995), cert. denied, 518 U.S. 1026, 116 S.Ct. 2568, 135 L.Ed.2d 1084 (1996)).
[3] Id. at 819-20, 41 P.3d 1225 (citing State v. Brown, 132 Wash.2d 529, 605, 940 P.2d 546 (1997), cert. denied, 523 U.S. 1007, 118 S.Ct. 1192, 140 L.Ed.2d 322 (1998)).
[4] Id. at 820, 41 P.3d 1225 (citing State v. Mark, 94 Wash.2d 520, 526, 618 P.2d 73 (1980)).
[5] The court also instructed the jury on alternative means of threatening the victim.
[6] State v. Emmanuel, 42 Wash.2d 799, 819, 259 P.2d 845 (1953).
[7] 42 Wash.2d 799, 259 P.2d 845 (1953).
[8] Emmanuel, 42 Wash.2d at 819, 259 P.2d 845.
[9] Id.
[10] Id.
[11] Brown, 132 Wash.2d at 605, 940 P.2d 546.
[12] 147 Wash.2d 141, 52 P.3d 26 (2002).
[13] Id. at 144, 52 P.3d 26.
[14] Id. at 147, 52 P.3d 26.
[15] Id. Mills argues that Oster only authorizes this procedure when prior convictions are the factor that elevate a misdemeanor to a felony because it benefits the defendant only in that circumstance. We do not read Oster so narrowly. The language Mills relies on limits its precise holding to the facts of that case but does not preclude applying its rationale to other similarly-structured crimes.
[16] RCW 26.50.110.
[17] RCW 26.50.110(5).
[18] Under RCW 9A.46.020,

(1) A person is guilty of harassment if:
(a) Without lawful authority, the person knowingly threatens:
(i) To cause bodily injury immediately or in the future to the person threatened or to any other person; ...
. . . .
(2) A person who harasses another is guilty of a gross misdemeanor ... except that the person is guilty of a class C felony if ... (b) the person harasses another person under subsection (1)(a)(i) of this section by threatening to kill the person threatened or any other person.
. . . .
Technically, there is no separate crime of "felony harassment." The crime is harassment, and the severity of the penalty depends on the severity of the threat.
[19] For example, the Revised Code of Washington has four separate statutes for the crime of assault. While the different felony classes of assault are set forth under RCW 9A.36.011-.31, misdemeanor assault is set forth under its own statute, RCW 9A.36.041. The Revised Code of Washington also separates felony theft from misdemeanor theft. While RCW 9A.56.030-.040 set forth the elements of felony theft, RCW 9A.56.050 sets forth the elements of misdemeanor theft.
[20] 11 Washington Pattern Jury Instructions: Criminal 36.07-.09 (2d ed.1998).
[21] Former RCW 9.94A.310(3) recodified as RCW 9.94A.510(3) (2001). Other similar examples are the drug crime enhancements for proximity to a school, school bus or park. Former RCW 9.94A.310(5) recodified as RCW 9.94A.510(5) (2001).
[22] Emmanuel, 42 Wash.2d at 819, 259 P.2d 845.
[23] DeRyke, 110 Wash.App. at 819-20, 41 P.3d 1225 (citing State v. Brown, 132 Wash.2d 529, 605, 940 P.2d 546 (1997), cert. denied, 523 U.S. 1007, 118 S.Ct. 1192, 140 L.Ed.2d 322 (1998)).
[24] While the WPIC's are not binding on the court, they are persuasive authority. State v. L.J.M., 79 Wash.App. 133, 140, 900 P.2d 1119 (1995), rev'd on other grounds, 129 Wash.2d 386, 918 P.2d 898 (1996).