109 P.3d 415 (2005)
154 Wash.2d 1
STATE of Washington, Respondent,
v.
Morning Leray MILLS, Petitioner.
No. 73894-7.
Supreme Court of Washington, En Banc.
Argued September 14, 2004.
Decided April 7, 2005.
*416 Jason Saunders, Washington Appellate Project, Seattle, for Petitioner.
James Morrissey Whisman, Julie Dee Cook, King County Prosecutor's Office, Seattle, for Respondent.
IRELAND, J.[*]
¶ 1 In this case, we address whether a single element may be bifurcated from the "to convict" instruction to a special verdict form where such element elevates a base crime from a misdemeanor to a felony. We hold that such bifurcation is constitutionally permissible if the legislature has created a statutory framework that establishes a base crime with elevated penalties if an additional fact is present, and that the additional element is found beyond a reasonable doubt by a unanimous jury. However, in this case we find that the jury instructions did not clearly set forth the requirement that the jury must find that the victim was placed in reasonable fear that the threat to kill would be carried out. Accordingly, we reverse and remand for a new trial.

FACTS AND PROCEDURAL HISTORY
¶ 2 In 2001, the State charged Petitioner Morning Mills with felony harassment,[1] based on a threatening phone message Jonikka Lawrence received in the early morning hours on June 7, 2000.
¶ 3 Morning Mills and Billy Edwards had been friends for many years until the two became intimate and had a child together, at which point their relationship deteriorated. Edwards subsequently became romantically involved with Jonikka Lawrence in 1999, and by June 2000 the two shared an apartment together.
¶ 4 On June 3, 2000, Mills called Lawrence and left a message for Lawrence to call her to "discuss ... our friend, Billy Edwards." Report of Proceedings (RP) at 58-59. This call "upset" Lawrence. Four days later, on June 7 at 12:45 a.m., Lawrence answered a phone call from Mills. Mills stated, "I told you about messing with him," and then told Lawrence to "look at your Altima,[2] go look at your Altima," and then hung up. Id. By that time Edwards was awake. He walked outside and discovered substantial damage to Lawrence's automobile. Lawrence and Edwards called the police. About two hours later, while Lawrence was speaking to the *417 police, she received another incoming call which she did not answer. The message's contents were as follows:
"Bitch, you fuckin' bitch. I'm tired of playin' around with you. Watch, I'm going to get a year tops when I murder your ass. I stabbed someone for messing with Bill, I got 33 days. Now watch what I'm going to get for murder. Bitch, you think I'm fuckin' playin'. You get the motherfucker to my house. Bitch, you didn't wanna call me back. Yeah, I'm a show you what I'm gonna do. I'm a kill you suicide, you need to know who the fuck I am. I'm gonna kill you in the back of your head, I'm going to walk up behind you, slit your fuckin' neck, you dumb ass bitch. That's why I just found out what apartment you live in. Now I'm coming over now."
Ex. 4 (audiotape of telephone call); RP 64-65.
¶ 5 Lawrence testified she became "very scared" after the phone call and after subsequently learning of Mills' criminal history "thought all the more [Mills] would carry out what she said she would do." RP at 92.
¶ 6 Mills was convicted by special verdict of "Telephone Harassment  Felony Domestic Violence" as charged in count I.
¶ 7 Mills appealed her conviction to Division One of the Court of Appeals. State v. Mills, 116 Wash.App. 106, 64 P.3d 1253 (2003). The court rejected the arguments that the bifurcated structure used by the trial court was constitutionally defective. Id. at 110-16, 64 P.3d 1253. We granted Mills' petition for review and consolidated the case with State v. Davis, 116 Wash.App. 81, 64 P.3d 661 (2003). However, following a rehearing of oral argument in State v. Davis, we deconsolidated Davis and Mills and issue separate opinions in each case.

ANALYSIS

I. Preservation of Error
¶ 8 Before addressing the adequacy of the "to convict" instruction, it is necessary to address the State's argument that Mills waived her challenge to the "to convict" jury instruction by failing to take exception to the instruction at trial.
¶ 9 The State argues that although this court has power to review constitutional errors, the alleged error below lacked the "manifest" requirement of RAP 2.5(a)(3), which governs whether a party may raise constitutional errors for first time on appeal. The Court of Appeals properly held that the "[f]ailure to instruct the jury on every element of the crime charged is an error of constitutional magnitude that may be raised for the first time on appeal." Mills, 116 Wash.App. at 110, 64 P.3d 1253. See State v. Roberts, 142 Wash.2d 471, 500-01, 14 P.3d 713 (2000); State v. Eastmond, 129 Wash.2d 497, 502, 919 P.2d 577 (1996). Errors are "manifest" for purposes of RAP 2.5(a)(3) when they have "`practical and identifiable consequences in the trial of the case.'" Roberts, 142 Wash.2d at 500, 14 P.3d 713 (quoting State v. WWJ Corp., 138 Wash.2d 595, 603, 980 P.2d 1257 (1999)).
¶ 10 The "to convict" instruction carries with it a special weight because the jury treats the instruction as a "yardstick" by which to measure a defendant's guilt or innocence. The issue of omission of an element from that instruction is of sufficient constitutional magnitude to warrant review when raised for the first time on appeal. Accordingly, we address the merits of Mills' challenge.

II. "To Convict" Jury Instructions
¶ 11 Mills argues that bifurcating the element which elevated her base misdemeanor to a felony from the "to convict" instruction unconstitutionally relieved the State of proving the element of a "threat to kill," thereby violating her constitutional right to due process[3] and a jury trial.[4] The State responds *418 by asserting the jury did find every element of the crime beyond a reasonable doubt, and placing the elevating fact in the special verdict form did not deny Mills due process, as the practice has been traditionally utilized and approved in other crimes where an elevating fact increases the statutory penalty.
¶ 12 We review the adequacy of a challenged "to convict" jury instruction de novo. State v. DeRyke, 149 Wash.2d 906, 910, 73 P.3d 1000 (2003). Though, as a general matter, "[j]ury instructions are sufficient if they are supported by substantial evidence, allow the parties to argue their theories of the case, and when read as a whole properly inform the jury of the applicable law," State v. Clausing, 147 Wash.2d 620, 626, 56 P.3d 550 (2002), and we review jury instructions "in the context of the instructions as a whole," State v. Pirtle, 127 Wash.2d 628, 656, 904 P.2d 245 (1995), the reviewing court generally "may not rely on other instructions to supply the element missing from the `to convict' instruction." DeRyke, 149 Wash.2d at 910, 73 P.3d 1000.
¶ 13 We generally adhere to the principle that the "to convict" instruction must contain all elements essential to the conviction. See State v. Smith, 131 Wash.2d 258, 263, 930 P.2d 917 (1997); State v. Emmanuel, 42 Wash.2d 799, 819, 259 P.2d 845 (1953). The Court of Appeals relied on Emmanuel to state "[a]s a general rule, the to-convict instruction need not specify every element of the charged crime in every case." Mills, 116 Wash.App. at 112, 64 P.3d 1253. However, the language from Emmanuel does not support this view, and in fact it is directly to the contrary. While we stated in Emmanuel that "as a general legal principle all the pertinent law need not be incorporated in one instruction," we nevertheless held an instruction that purports to be a complete statement of the crime must in fact contain every element of the crime charged. Emmanuel, 42 Wash.2d at 819, 259 P.2d 845. It is clear the above quote from Emmanuel referenced other "pertinent law," such as definitions of terms, duties of the jury to disregard statements that are not evidence, and so forth. To view Emmanuel otherwise would be self-contradictory.
¶ 14 Despite this, we recognized an exception very recently in State v. Oster, 147 Wash.2d 141, 52 P.3d 26 (2002). There the defendant was convicted of felony violation of a domestic violence no-contact order. Id. at 143-44, 52 P.3d 26. The "to convict" instruction bifurcated the element of two or more prior convictions, the existence of which elevated the offense from a misdemeanor to a felony. Id. at 144-45, 52 P.3d 26. That element (prior convictions) was found by the jury beyond a reasonable doubt using a special verdict form. Id. at 145, 52 P.3d 26. We affirmed the conviction and recognized a limited exception to the general rule established in Smith and Emmanuel and held that the "to convict" instruction could separate the element of prior criminal history into a special verdict form so long as the jury made the finding beyond a reasonable doubt. Id. at 147, 52 P.3d 26. We reasoned the defendant's rights were better protected by the bifurcation because of the inherent prejudicial effect of prior criminal history. Id. Nevertheless, we reaffirmed Smith and Emmanuel to the extent they hold, "[t]he jury has a right to regard the `to convict' instruction as a complete statement of the law and should not be required to search other instructions in order to add elements necessary for conviction." Id.
¶ 15 Mills contends the Oster exception is limited solely to those crimes where the element which aggravates the underlying crime from a misdemeanor to a felony is the existence of prior convictions, whereas the State contends there is no material distinction between Oster and this case. Specifically, the State directs us to aggravated murder cases where we have approved such a bifurcated approach. We agree with the State, as limiting the Oster exception to prior convictions would undercut the appropriate use of special verdicts altogether.
¶ 16 Mills points to the United States Supreme Court's recent clarification of the term "element." See Apprendi v. New Jersey, 530 *419 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Apprendi held "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. The Court reaffirmed Apprendi two years later in Ring v. Arizona, 536 U.S. 584, 609, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), and held facts which are necessary to impose a greater sentence are "`the functional equivalent of an element of a greater offense.'" Id. at 609, 122 S.Ct. 2428 (quoting Apprendi, 530 U.S. at 494 n. 19, 120 S.Ct. 2348). Ring held unconstitutional Arizona's scheme of allowing the judge to be the finder of fact of the factors necessary to impose the death penalty.
¶ 17 Here, it is unquestionably true that "threatening to kill" is an element of felony harassment, RCW 9A.46.020(2)(b).[5] But holding as Mills asks us to do, in light of Ring and Apprendi, could abolish the use of special verdict forms altogether. Under Ring and Apprendi the elements of aggravated first degree murder are premeditated first degree murder under RCW 9A.32.030(1)(a) and at least one of the aggravating circumstances from RCW 10.95.020. Thus, if we were to slavishly follow Smith and Emmanuel in light of Ring and Apprendi, a case involving aggravated first degree murder would require the "to convict" instruction to contain all elements of premeditated first degree murder as well as the aggravating factors necessary to impose the death penalty. This would disturb the carefully crafted legislative procedure separating consideration of guilt from the penalty phase.
¶ 18 Mills' proposed rule would also put in question the use of the special verdict form used in drug cases where the defendant is charged with possession with intent to deliver in a school zone. See RCW 69.50.435(1)(a) (allowing a sentence twice the maximum had the offense not occurred in a school zone). Following Mills' proposed rule, the school zone infraction is an element of the offense (since it increases the statutory maximum) and it would have to be included in the "to convict" instruction, thereby prohibiting the current practice of bifurcating that element into a special verdict form. This is not an approach the constitution requires. The Ring-Apprendi rule requires only that a unanimous jury find an aggravating element (as well as all other elements) beyond a reasonable doubt.
¶ 19 We hold that where the legislature has established a statutory framework which defines a base crime which is elevated to a greater crime if a certain fact is present, a trial court may, consistent with the guaranties of due process and trial by jury, bifurcate the elevating fact into a special verdict form. So long as the jury is instructed it must unanimously agree beyond a reasonable doubt before it may affirmatively answer the special verdict, the constitution is not offended.[6]
¶ 20 We next examine the instructions in this case to determine whether the jury was clearly instructed as to all the elements to which it must unanimously agree beyond a reasonable doubt before affirmatively answering the special verdict.
¶ 21 In order to convict Mills of felony harassment based on a threat to kill, RCW 9A.46.020 requires that the State prove that the person threatened was placed in reasonable fear that the threat to kill would be carried out. State v. C.G., 150 Wash.2d 604, 612, 80 P.3d 594 (2003).
¶ 22 The issue in C.G. was whether, under the harassment statute, RCW 9A.46.020, a conviction for felony harassment based upon a threat to kill requires proof that the person threatened was placed in reasonable fear that the threat would be carried out. C.G., 150 Wash.2d at 606, 80 P.3d 594. This court held that such proof is required and that C.G.'s conviction required reversal because there *420 was no evidence that the victim was placed in reasonable fear that C.G. would kill him. Id.
¶ 23 In C.G., a juvenile defendant was convicted of felony harassment based on her threats to a school vice-principal. During the incident at the school, she told the vice-principal, "I'll kill you, Mr. Haney. I'll kill you." At trial, the vice-principal testified that C.G.'s threats caused him concern, and he thought C.G. might try to harm him or someone else in the future. The vice-principal never testified that the threat caused him to fear for his life. C.G. was convicted.
¶ 24 On appeal, C.G. argued that the harassment statute requires proof that the victim was in reasonable fear that the threat to kill would be carried out. This court agreed. In reaching that conclusion, we examined the harassment statute, which provides:
(1) A person is guilty of harassment if:
(a) Without lawful authority, the person knowingly threatens:
(i) To cause bodily injury immediately or in the future to the person threatened or to any other person [and]
....
(b) The person by words or conduct places the person threatened in reasonable fear that the threat will be carried out....
(2) ... (b) A person who harasses another is guilty of a class C felony if ... (ii) the person harasses another person under subsection (1)(a)(i) of this section by threatening to kill the person threatened or any other person.
RCW 9A.46.020.
¶ 25 Regarding the statute, we noted that the requirement of "reasonable fear" appears in the section addressing misdemeanor harassment. However, it is obvious that the requirement of reasonable fear applies to felony harassment. C.G., 150 Wash.2d at 609, 80 P.3d 594. The offense of harassment is elevated from a misdemeanor to a felony when the threat is a threat to kill. Id. We stated:
The threat to kill, however, is not listed in subsection (1)(a) as one of the threats that is proscribed as a misdemeanor. It is, nevertheless, obvious that the legislature meant to proscribe threats to kill, given that it expressly provided that a threat to kill results in a felony. The logical way to read the statute is to conclude, the same as in the case of misdemeanor threats, that the fear in the case of the threat to kill must be of the actual threat made  the threat to kill. Thus, the statute means that subsection (2)(b) adds a threat not listed in subsection (1)(a), i.e., a threat to kill.
Whatever the threat, whether listed in subsection (1)(a) or a threat to kill as stated in subsection (2)(a), the State must prove that the victim was placed in reasonable fear that the same threat, i.e., "the" threat, would be carried out.
C.G., 150 Wash.2d at 609, 80 P.3d 594.
¶ 26 In C.G., there was no evidence Mr. Haney was placed in reasonable fear that C.G. would kill him. Id. at 610, 80 P.3d 594. Therefore, we reversed the conviction.
¶ 27 Unlike C.G., in the current case, there was ample evidence that Lawrence was placed in reasonable fear that Mills would carry out her threat to kill. Mills' threat was recorded on the telephone answering machine, and it included several explicit threats to kill Lawrence. Moreover, Lawrence knew that Mills had already been convicted of assaulting another woman who dated Mills' ex-boyfriend. At trial, Lawrence testified that she was "very scared" and believed Mills was "capable of doing what she threatened to do." RP at 65.
¶ 28 Unlike C.G., the parties in this case do not argue whether there was sufficient evidence that Lawrence was placed in reasonable fear that Mills' threat to kill Lawrence would be carried out. Instead, the issue in the current case is whether the jury was properly instructed that in order to convict Mills of felony harassment it must find that Lawrence was placed in reasonable fear that the threat to kill would be carried out. According to Mills, the jury was erroneously instructed because the "threat to kill" element was contained in a special verdict form rather than in the "to convict" instruction. Instruction 8, the "to convict" instruction, provided:

*421 To convict the defendant of the crime of harassment, as charged in count 1, each of the following elements of the crime must be proved beyond a reasonable doubt:
(1) That on or about June 7, 2000, the defendant knowingly threatened:
(a) to cause bodily injury immediately or in the future to Jonikka Lawrence, or
(b) to cause physical damage to the property of Jonikka Lawrence, or
(c) to subject to physical confinement or restraint, or
(d) maliciously to do any act which was intended to substantially harm Jonikka Lawrence with respect to her physical safety; and
(2) That the words or conduct of the defendant placed Jonikka Lawrence in reasonable fear that the threat would be carried out.
Clerk's Papers (CP) at 25, Instruction 8.
¶ 29 Instruction 9 provided in pertinent part:
If you find the defendant guilty of harassment, as charged in count 1, you will complete the special verdict form provided to you for this purpose.... If you find that the State has proved beyond a reasonable doubt that the defendant's threat to cause bodily harm was a threat to kill the person threatened or another person, it will be your duty to answer the special verdict "yes", as to count 1.
CP at 27, Instruction 9.
¶ 30 Although the "to convict" instruction did not contain the "threatening to kill" element of felony harassment, the jury was instructed on the "threat to kill" requirement by Instruction 9, the special verdict form instruction. Moreover, the jury was instructed to answer the question in the special verdict form only if it found that Mills' threat of bodily injury was a threat to kill. However, the jury was not instructed in Instruction 9 that it must find that Lawrence was placed in reasonable fear the threat to kill would be carried out. The State argues that in convicting Mills of felony harassment as charged in count 1, the jury necessarily found that the threat of bodily injury was a threat to kill, and also that the threat caused reasonable fear that it would be carried out. According to the State, the jury only considered the special verdict form after finding beyond a reasonable doubt that Lawrence was placed in reasonable fear that "the threat" would be carried out.
¶ 31 The State's argument requires us to ignore the error in the "to convict" instruction. The "to convict" instruction sets forth the elements of (misdemeanor) harassment, but states that the elements are necessary to convict Mills of count I, which is felony harassment. Harassment was defined for the jury in Instruction 7. CP at 24. Felony harassment was not separately defined. Moreover, Verdict Form A stated:
We, the jury, find the defendant Morning L. Mills ______ (write not guilty or guilty) of the crime of Harassment as charged in count I.
Verdict Form C was identical to A except that it ended "as charged in count III."
¶ 32 The State argues the jury could rely on the words of RCW 9A.46.020(1)(b) in Instruction 8 that "the person by words or conduct places the person threatened in reasonable fear that the threat will be carried out...." (emphasis added). The State would fill in the reasonable fear gap in Instruction 9 by referring back to Instruction 8.
¶ 33 However, the threat as used in Instruction 8 logically refers to the threats listed in RCW 9A.46.020(1)(a). Subsection (1)(a)(i) referred to a threat to cause bodily injury, not a threat to kill. A jury might believe that Mills placed the victim in reasonable fear of bodily injury without considering whether Mills placed the victim in reasonable fear of being killed.[7]
*422 ¶ 34 The State's attempted gap-filling in Instruction 9 does not meet the requirement that all elements of the offense be clearly set forth. Emmanuel, 42 Wash.2d at 819, 259 P.2d 845. In addition, Instruction 8 contained surplusage in paragraph (1), referring to threats (b) to cause physical damage to property, (c) to subject to physical confinement, or (d) maliciously to do any act intended to substantially harm the victim with respect to her physical safety.
¶ 35 No charges in the case related to paragraph (1)(b), (c), or (d). Of itself, the inclusion of this surplusage might not rise to a constitutional defect in the instruction. However, the surplusage added to an already erroneously confused instruction.
¶ 36 Under the instructions of this case, we hold that the jury was not instructed on all the elements required to convict Mills of felony harassment under RCW 9A.46.020. Accordingly, we reverse the Court of Appeals and remand for a new trial.
WE CONCUR: ALEXANDER, C.J., and C. JOHNSON, MADSEN, BRIDGE, CHAMBERS, OWENS, FAIRHURST, JJ.
NOTES
[*] Justice Faith Ireland is serving as a justice pro tempore of the Supreme Court pursuant to Washington Constitution article IV, section 2(a).
[1] The State also charged Mills with misdemeanor harassment and second degree malicious mischief. She was acquitted on those charges.
[2] Lawrence owned a 1995 Nissan Altima.
[3] See U.S. CONST. amend. XIV, § 1 ("[N]or shall any state deprive any person of life, liberty, or property, without due process of law."); WASH. CONST. art. I, § 3 ("No person shall be deprived of life, liberty, or property, without due process of law.").
[4] See U.S. CONST. art. III, § 2 ("The trial of all crimes, except in cases of impeachment, shall be by jury.") and id. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury."); WASH. CONST. art. I, § 21 ("The right of a trial by jury shall remain inviolate."); id. art. I, § 22 ("In criminal prosecutions the accused shall have the right ... to have a speedy public trial by an impartial jury.").
[5] RCW 9A.46.020(2)(b) uses the words "threatening to kill," which is also referred to in briefing as the "threat to kill" element. We use the terms interchangeably.
[6] We emphasize, however, that while such bifurcation is constitutionally permissible, it is not constitutionally required. There would have been no constitutional violation had the trial court provided one "to convict" instruction including the "threatening to kill" element.
[7] The State asks that we consider any instructional error in the case harmless, relying on State v. Brown, 147 Wash.2d 330, 58 P.3d 889 (2002). The Brown court determined that an instructional error could be found harmless if, beyond a reasonable doubt, "`"the error complained of did not contribute to the verdict obtained."'" 147 Wash.2d at 341, 58 P.3d 889 (quoting Neder v. United States, 527 U.S. 1, 15, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (quoting Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967))). Although it is clear from the record that Mills made a threat to kill, we cannot say beyond a reasonable doubt that the jury would find the victim was placed in reasonable fear of being killed. Therefore, the error here is not harmless.