FILED
COURT OF APPEALS
DIVISION II

2014 FEB 25 AM 9: 46

STATE OF WASHINGTON
BY
DEPUTY

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43709-1-II |
| Respondent, | |
| v. | |
| JASON CHRISTOPHER SCHEIBEL, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — A jury found Jason Christopher Scheibel guilty of felony harassment. Scheibel appeals alleging the jury instruction used in his trial was unconstitutional under our Supreme Court's opinion in *State v. Mills*, 154 Wn.2d 1, 109 P.3d 415 (2005). The State properly concedes that the jury instruction was erroneous. The error was not harmless. Therefore, we reverse and remand for further proceedings consistent with its opinion.

FACTS

Karen Gunter was involved in an intimate relationship with Scheibel for approximately eight months, from early 2011 until September 2011. Gunter broke up with Scheibel in the first week of September. After Gunter ended the relationship, Scheibel sent her numerous text messages trying to get back together with her. On September 18, Gunter went to work as a bartender at Scooter's Bar and Grill. While Gunter was at work, Scheibel constantly called her and sent her numerous text messages. At one point, Gunter asked her friend, Lincoln Buchan, to call Scheibel and tell Scheibel to leave her alone. Later, Scheibel came into the bar but he left when Gunter called the police.

When Buchan called Scheibel, Scheibel called Buchan a punk and threatened to break him in half. At the time, Buchan believed Scheibel was "another guy just blowing off steam." 1 Report of Proceedings (RP) at 47. After Buchan called Scheibel, Scheibel called Buchan's cell phone repeatedly and left him numerous voicemail messages, but Buchan did not immediately listen to the messages.

Later, Buchan served Scheibel with an anti-harassment order protecting Gunter. Scheibel got angry and told Buchan that he was not kidding in the voicemails he left for Buchan. Buchan decided to listen to the voicemails. Scheibel left two voicemails in which he said:

> How would you like a little f\*cking (inaudible.)? You don't understand, dude. (inaudible) about the car? I f\*cking swiped the tires. I will break you in f\*cking two, dude. Don't ever f\*ck with my woman, ever, dude, f\*ck with my woman. I (inaudible) with my woman, on every f\*cking day. Don't try to (inaudible) f\*cking (inaudible), you're a lying sack a shit, dude. I f\*cked her like no man could even know. (inaudible). So whatever you (inaudible) you're doing then, trying to get (inaudible). You're a dead man. You know what, you're a dead man.
>
> . . . .
>
> . . . (inaudible) what Karen said. F\*ck the (inaudible) what you're going to do. First off, dude, I'll snap you like a piece of (inaudible). (inaudible) f\*ck your (inaudible) out. (inaudible), you know who I am. Because I will break you in f\*cking two, little boy. Any time, any place, anywhere. F\*ck with (s/l) my ex-woman, you f\*ck with death. You don't even understand, dude. F\*ck, I worked hard (s/l) on her. (s/l) Okay.

2 RP 140-41. After listening to the voicemails Buchan became concerned for his safety and believed Scheibel was going to follow through on his threats. Scheibel continued to text Buchan. Sometimes Buchan replied to the text messages. In two different text messages Buchan wrote:

> I asked her and she said yes, she would love to marry me. Thanks again, you punk bitch.
>
> . . . .

2

. . . Thanks, freak, for all the insane things you've done to Karen. You acting like the punk chubby you are. She told of yesterday, she has been waiting for me all her life.

1 RP 70-71. Later, at trial, Buchan testified that he sent the text messages to Scheibel in an attempt to deflect Scheibel's anger away from Gunter onto him.

On November 22, 2011, the State charged Scheibel with one count of second degree malicious mischief, one count of felony harassment, and one count of third degree theft.[1] A two-day trial began on June 27, 2012. Gunter and Buchan testified to the above facts. After testimony, the trial court gave bifurcated jury instructions for the felony harassment charges. First, the trial court gave the following jury instruction:

Instruction No. 17

To convict the defendant of the crime of harassment, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That on or about September 19, 2011, the defendant knowingly threatened to cause bodily injury immediately or in the future to Lincoln Douglas Buchan;
(2) That the words or conduct of the defendant placed Lincoln Douglas Buchan in reasonable fear that the threat would be carried out;
(3) That the defendant acted without lawful authority; and
(4) That the threat was made or received in the State of Washington.

If you find from the evidence that these have been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

Clerk's Papers (CP) at 80. The jury was also given a special verdict which read:

---

[1] Ultimately, the jury also found Scheibel guilty of second degree malicious mischief and third degree theft. However, Scheibel does not appeal those convictions.

3

**USE THIS SPECIAL VERDICT FORM ONLY IF YOU FIND THE DEFENDANT GUILTY OF HARASSMENT. IF YOU FIND THE DEFENDANT NOT GUILTY OF HARASSMENT, DO NOT USE THIS SPECIAL VERDICT FORM.**

We, the jury, return a special verdict by answering as follows:

Did the defendant's threat to cause bodily harm consist of a threat to kill the person threatened or another person?

CP at 4. The jury found Scheibel guilty of harassment and answered yes on the special verdict form. The trial court sentenced Scheibel to a standard range sentence of 56 months total confinement. Scheibel appeals.

## ANALYSIS

Scheibel argues that the trial court erred in giving the bifurcated jury instructions on felony harassment because these instructions did not require the State to prove beyond a reasonable doubt that Buchan was placed in reasonable fear of being killed by Scheibel. The State concedes the jury instructions were erroneous. In *Mills*, 154 Wn.2d at 15, our Supreme Court held that the same bifurcated instructions on felony harassment were erroneous. *Mills* is controlling and the State's concession is well-taken. However, the State argues that the instructional error is harmless and does not require reversal. We disagree. Here, the instructional error was not harmless, and Scheibel's felony harassment conviction must be reversed.

This court presumes that an instructional error is prejudicial unless the record affirmatively shows that the error was harmless. *State v. Smith*, 131 Wn.2d 258, 263, 930 P.2d 917 (1997). "In order to hold the error harmless, we must 'conclude beyond a reasonable doubt

4

that the jury verdict would have been the same absent the error.'" *State v. Brown*, 147 Wn.2d 330, 341, 58 P.3d 889 (2002) (quoting *Neder v. United States*, 527 U.S. 1, 19, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999)). When the jury instruction has omitted or misstated an element of the crime, the instructional error is harmless if the omitted or misstated element is supported by uncontroverted evidence. *Brown*, 147 Wn.2d at 341.

In *Mills,* our Supreme Court held that the same felony harassment instruction used here relieves the State of its burden to prove that the victim was placed in reasonable fear that the threat to kill would be carried out. 154 Wn.2d at 14-15 ("A jury might believe that [the defendant] placed the victim in reasonable fear of bodily injury without considering whether [the defendant] placed the victim in reasonable fear of being killed."). The court also held that the error was not harmless under the facts of that case. *Mills*, 154 Wn.2d at 15 n.7.

In *Mills*, the victim testified that she was afraid of the defendant and that she believed the defendant would carry out the threats. 154 Wn.2d at 5. However, the victim did not testify that she was in reasonable fear of being killed. In response to the State's harmless error argument, our Supreme Court in *Mills* stated:

> Although it is clear from the record that [the defendant] made a threat to kill, we cannot say beyond a reasonable doubt that the jury would find the victim was placed in reasonable fear of being killed. Therefore, the error here is not harmless.

*Mills*, 154 Wn.2d at 15 n.7.

Similarly, here, Buchan testified that he was not immediately afraid of Scheibel's threats. Although Buchan also testified that he became afraid that Scheibel would carry out his threat, he did not testify that he was actually afraid Scheibel would kill him. Further, even after Scheibel

made the threats, Buchan, on at least two occasions, antagonized Scheibel through text messages. Like the victim in *Mills*, there is no evidence Buchan was in reasonable fear that Schiebel would kill him.

Here, the facts are almost identical to the facts in *Mills*. We reach the same conclusion and hold that the instructional error was not harmless. Accordingly, Scheibel's felony harassment conviction is reversed, and the case remanded for further proceedings consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Penoyar, J.

Maxa, J.

6