FILED
JUNE 1, 2017
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34965-9-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BILLY CHARLES BROWN, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, C.J. — Billy Brown threatened to physically harm his community

custody officer, but the officer heard that Brown threatened to kill her. Because the

officer did not fear from the actual threat uttered by Brown, we reverse his conviction for

felony harassment involving a threat to a criminal justice system participant.

## FACTS

Department of Corrections (DOC) Probation Officer Bethany Clemons supervised

Billy Brown during his community custody. When Brown reported, on December 17,

2015, to DOC, Clemons requested Brown supply a urine sample for a urinalysis drug test.

In response to Clemons' request, Brown grew agitated and requested drug treatment.

Clemons offered Brown the ultimatum of providing a sample for urinalysis or entering

jail, and Brown chose jail. When DOC officers handcuffed Brown, he angrily

complained that the department refused him needed assistance. DOC officers transported Brown to the Clark County Jail.

At the jail, Billy Brown requested mental health treatment, so, on December 17, 2015, jail mental health coordinator Virginia Walker met with him. Brown told Walker that he encountered difficulties with his probation officer, Bethany Clemons, because she wished him to fail at living outside of jail. He expressed anger and agitation toward Clemons. Brown also declared to Walker that he may want to end his life and hurt his probation officer. Within an hour of meeting with Brown, Walker noted in her written report that Brown threatened to hurt Clemons. Nevertheless, at some unknown time after the meeting, Walker warned a jail officer that Brown threatened to kill Clemons. The Clark County jail sent a facsimile message to the DOC office, in which message the jail alerted DOC to the threat to kill Clemons.

Later on December 17, 2015, DOC Officers Shelly Smith and Lisa Gay met with Bethany Clemons. Officer Gay apprised Clemons that Billy Brown threatened to kill her if she "continued to do this to him." Report of Proceedings (RP) at 16, 18, 19. Based on her knowledge of Brown's history and his noncompliance with instructions that day, Clemons believed Brown would fulfill the threat. Clemons knew of and gave credence to Brown's record of previous assaults, obstructing law enforcement, and resisting arrest. Nobody told Clemons that Brown threatened to hurt her.

2

## PROCEDURE

The State of Washington charged Billy Brown with felony harassment involving a threat to a criminal justice participant. During cross-examination by Brown's attorney during a bench trial, Bethany Clemons testified:

> Q: Okay. So because you heard that this threat was allegedly a threat to kill that certainly—wouldn't you agree—get you [more] upset than if you had had a notice that well he's threatened to hurt you—is that—is there any difference between those two types of things that you hear if you were to hear something else besides he's going to kill you?
> A: You mean if he said that he wanted to hurt me or—
> Q: Yeah.
> A: —kill me—
> Q: Exactly. If you heard that this was—instead of he threatened to kill you if [you] would have heard well he said he's going to hurt you—what—what would you—
> A: I would still believe that he would follow through by hurting me.
> Q: —okay.
> A: I mean there's a big difference—killing and hurting—yeah.

RP at 23-24.

Mental health coordinator Virginia Walker testified at trial that, during her meeting with Billy Brown on December 17, 2015, he threatened to kill Bethany Clemons. The State questioned Walker further.

> Q: Do you remember the exact words he may—he said?
> A: I don't—but my memory—that's what my memory tells me over and over again—is that I will kill her if I have to work with her again.

RP at 31. The trial court did not find Walker's trial testimony as credible as the report Walker wrote within an hour of meeting with Brown, during which Brown uttered the

3

threat to do harm.

The trial court found Billy Brown guilty, despite stating it "waffled back from acquittal to conviction." RP at 72. In its oral ruling, the trial court explained:

So the whole question I wrestled with—the fact that it appears to me I can't find beyond a reasonable doubt that the threat of killing her was conveyed or was made—what was conveyed to her—there's no question was that he wanted—the threat of killing her.

. . . .

I think the State has proven their case beyond a reasonable doubt. The context of this is—but I—and I'm making this record so should it go up on review—which he's going to have an automatic right to review—it would make sense to have this reviewed.

The question centers on my taking on this is—and I'm making the finding that the threat to do bodily harm in that level was not conveyed to her. It was conveyed to her the threat to kill. But I'm finding that a reasonable criminal justice participant would be fearful of the threat that was, in fact made.

RP at 77-78. The trial court entered findings of fact, including:

11. While meeting with Ms. Walker on December 17th, [2015] in the Clark County Jail in Vancouver, WA, Defendant said to Ms. Walker that he [was] frustrated with Officer Clemons and that he may want to end his own life and *hurt* his probation officer. Defendant felt that Ms. Clemons did not believe in him and was trying to make him fail.

12. On December 17th, [2015], Ms. Walker conveyed Defendant's words to a custody officer, and the Defendant's statements were eventually conveyed to Ms. Clemons. Ms. Walker verbally conveyed to a custody officer at the jail that Mr. Brown had said he wanted to *kill* his probation officer. In a written report of the incident made approximately 45-60 minutes later, Ms. Walker wrote that Mr. Brown wanted to *hurt* his probation officer. Ms. Clemons, the probation officer, was not notified by anyone that Mr. Brown wanted to *hurt* his probation officer, but rather was notified that Brown wanted to *kill* his probation officer.

13. Upon hearing Defendant's statements, Ms. Clemons was in fear that if released, Defendant could possibly hurt her or cause her bodily harm.

4

No. 34965-9-III
*State v. Brown*

CP at 5-6 (emphasis added). Conclusions of law two and four provide:

> 2. The Court finds that Ms. Clemons was a criminal justice participant, Defendant threatened to cause her bodily injury in the future, and that she was in reasonable fear Defendant would carry out the threats. And the threats were made because of an action taken or decision made by Ms. Clemons while she was performing her official duties, under RCW 9A.46.020(2)(b)(iii) (sic).
> . . . .
> 4. A reasonable criminal justice participant would have been in fear of Defendant's threat under all the circumstances presented.

CP at 6. The trial court sentenced Billy Brown to fifty-one months' confinement. CP at 10.

## LAW AND ANALYSIS

*Issue: Whether the State must prove beyond a reasonable doubt that the victim feared from Billy Brown's specific threat to harm her?*

*Answer: Yes. Since the State did not prove this factual proposition, we reverse Billy Brown's conviction.*

Billy Brown contends the trial court erred when finding him guilty because the victim, Bethany Clemons, never received the threat he actually rendered. Brown threatened to hurt Clemons, but she heard that he threatened to kill her. Brown argues the evidence fails to support his conviction without Clemons experiencing reasonable fear from his actual threat. The State responds that a threat to kill necessarily includes a threat to inflict bodily injury, thus, if one reasonably fears a death threat, she also reasonably fears she may receive bodily injury. Based on Supreme Court precedent, we agree with

5

Brown.

Evidence suffices if a rational trier of fact could find each element of the crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980). To determine whether sufficient evidence supports a conviction, we view the evidence in the light most favorable to the State and determine whether any rational fact finder could have found the elements of the crime beyond a reasonable doubt. *State v. Engel*, 166 Wn.2d 572, 576, 210 P.3d 1007 (2009).

We find no fault in the trial court's findings of fact, but conclude that those findings do not support a conclusion that Billy Brown committed the crime of felony harassment. We review challenges to a trial court's conclusions of law de novo. *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014).

The State charged Billy Brown with harassment of a criminal justice participant under RCW 9A.46.020. The statute declares:

> (1) A person is guilty of harassment if:
> (a) Without lawful authority, the person knowingly threatens:
> (i) To cause bodily injury immediately or in the future to the person threatened or to any other person . . .
> . . . .
> . . . and
> (b) The person by words or conduct places the person threatened in reasonable fear that *the threat* will be carried out. "Words or conduct" includes, in addition to any other form of communication or conduct, the sending of an electronic communication.
> (2) (a) Except as provided in (b) of this subsection, a person who harasses another is guilty of a gross misdemeanor.

6

(b) A person who harasses another is guilty of a class C felony if any of the following apply . . . (ii) the person harasses another person under subsection (1)(a)(i) of this section by threatening to kill the person threatened or any other person; (iii) the person harasses a criminal justice participant who is performing his or her official duties at the time the threat is made; or (iv) the person harasses a criminal justice participant because of an action taken or decision made by the criminal justice participant during the performance of his or her official duties . . .

. . . .

(4) For purposes of this section, a criminal justice participant includes any . . . community corrections officer, probation, or parole officer.

(Emphasis added.)

Under RCW 9A.46.020, the State must prove that the person threatened was placed in reasonable fear that "the threat" would be carried out. *State v. Mills*, 154 Wn.2d 1, 10-11, 109 P.3d 415 (2005). The statute's employment of the definite article "the" looms important. The words "the threat" are key to RCW 9A.46.020's meaning and require that the State prove that the person threatened was placed in reasonable fear of the actual threat made. *State v. C.G.*, 150 Wn.2d 604, 609, 80 P.3d 594 (2003). The law requires that "the threat made and the threat feared are the same." *State v. C.G.*, 150 Wn.2d at 609.

Whatever the threat, whether listed in subsection (1)(a) [threat to cause bodily harm] or a threat to kill as stated in subsection (2)(b), the State must prove that the victim was placed in reasonable fear that the same threat, i.e., "the" threat, would be carried out.

*State v. C.G.*, 150 Wn.2d at 609.

*State v. C.G.* controls our decision. Our Supreme Court overturned a student's conviction for felony harassment for threatening to kill her school's vice-principal. At trial, the vice-principal testified that the threat caused him concern, and, based on his knowledge of C.G., she might try to harm him or someone else in the future. The vice-principal never mentioned a fear of being killed. The court found that the vice-principal's testimony failed to evidence his immediate fear that C.G. would actually kill him. C.G. threatened to kill and the vice-principal reasonably feared she threatened harm. C.G. was not guilty of felony harassment because the victim never feared a threat to kill.

The level of threat and the feared threat level reverse themselves in this appeal. Nevertheless, the result remains the same. Billy Brown threatened to hurt Bethany Clemons. Based on a flawed report, Clemons feared that Brown threatened to kill her. Therefore, Clemons' fear did not relate to "the threat" actually uttered by Brown. Clemons testified hypothetically that she would have feared bodily harm if she learned that Brown threatened to harm her. Nevertheless, Clemons never heard the actual threat rendered by Brown.

The State seeks to distinguish *State v. C.G.* on the basis that the actual threat in *C.G.* was a threat to kill. The State argues that, since Bethany Clemons feared for her life, she must also have feared for her bodily safety. We read *State v. C.G.* broader. The Supreme Court requires the actual threat and the feared threat to be identical.

8

No. 34965-9-III
*State v. Brown*

The State emphasizes that the Supreme Court qualified its holding in *State v. C.G.* by writing that the fear experienced need not literally match the threat stated. *State v. C.G.*, 150 Wn.2d at 610-11. The State misreads this passage, however. The Supreme Court wrote that the statute does not require a "literal threat" interpretation. *State v. C.G.*, 150 Wn.2d at 610-11. With this sentence, the court sought to avoid the quandary of veiled or metaphorical threats, such as a threat to "blow one away." The victim need not assume that the harasser intends to place an industrial fan in front of the victim. The victim may grasp the threat as one seriously intimidating the victim with death.

## CONCLUSION

We reverse Billy Brown's conviction for felony harassment because the evidence was insufficient to prove Bethany Clemons reasonably feared from Brown's threat to hurt her. We dismiss the charge against Brown.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Fearing, J.

Fearing, C.J.

WE CONCUR:

Korsmo, J.

Lawrence-Berrey, J.