[No. 65456-0-I. Division One. January 30, 2012.]

THE STATE OF WASHINGTON, *Respondent*, v. JASON NOEL KILLINGSWORTH, *Appellant*.

*Oliver R. Davis* (of *Washington Appellate Project*), for appellant.

*Mark K. Roe, Prosecuting Attorney*, and *Mary K. Webber* and *Walter J. Sowa, Deputies*, for respondent.

¶1 DWYER, C.J. — When evaluating the adequacy of jury instructions, courts must read them as would an ordinary, reasonable juror. Reading the instructions at issue in this case in that manner, we conclude they were adequate. We also conclude that the prosecutor did not commit misconduct in closing argument and that the conviction for trafficking in stolen property is supported by sufficient evidence. We therefore affirm.

I

¶2 Around 10:00 p.m. on July 12, 2009, Trista Lemmons' brother, Stephen Hendrickson, looked outside Lemmons' house and noticed that the dome light was on in her family's truck. Hendrickson also noticed two people standing under a street light. When he went downstairs to investigate, the two people ran off. Lemmons found nothing missing from the truck but did not check to see if a key to her Volkswagen Jetta was still in the truck's center console.

¶3 Just before midnight, Lemmons' neighbor, Michael Hayslip, saw Lemmons' Jetta parked in front of her home.

¶4 About 5:30 the next morning, Lemmons discovered that the Jetta key and the Jetta were gone. A short time later, they found the Jetta in a nearby field. The front end, passenger side, and lights were smashed, one of the tires was flat, grass was imbedded in parts of the car, ashes were spread around the inside of the car, and an iPod and global

positioning system (GPS) were missing. There was a receipt from Haggen's grocery in the passenger side door pocket. The receipt was for a can of "Steel High Gravity" beer and a pack of cigarettes, purchased at 12:38 a.m. on July 13, 2009. A Haggen's grocery bag with a can of Steel beer inside it was found next to the car.

¶5 Information on the receipt led police to Catherine Bowen. She testified that she was living in Killingsworth's home in July 2009 and owned a Haggen's loyalty card.

¶6 Surveillance video from the Haggen's store showed a man purchasing beer and cigarettes between 12:33 and 12:39 a.m. After viewing still photos from the video, Bowen identified the man as Jason Killingsworth. A detective then ran Killingsworth's name through a pawn shop transaction database. The detective learned from that database that the defendant had pawned an iPod and a GPS unit at a pawn shop. Lemmons identified the pawned devices as the iPod and GPS taken from her Jetta.

¶7 Susan Thompson, an employee of the pawn shop, identified Killingsworth as the person who pawned the devices. A pawn slip signed by Killingsworth showed that the devices were pawned at 1:30 p.m. on July 13, 2009.

¶8 The State charged Killingsworth with theft of a motor vehicle, first degree trafficking in stolen property, and second degree taking a motor vehicle without permission. The trial court denied his midtrial motion to dismiss the charges for insufficient evidence. The jury found Killingsworth not guilty of taking or theft of a motor vehicle but convicted him of trafficking in stolen property.

## II

¶9 Killingsworth first contends that his conviction is not supported by sufficient evidence. Specifically, he contends that there was insufficient evidence that he knew the property he pawned was stolen. Evidence is sufficient if, when viewed in a light most favorable to the State, it

permits any rational trier of fact to find the elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). A claim of insufficient evidence admits the truth of the evidence and all reasonable inferences that can be drawn from that evidence. *Salinas*, 119 Wn.2d at 201. Circumstantial evidence and direct evidence are equally reliable, *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980), and we must defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990); *State v. Walton*, 64 Wn. App. 410, 415-16, 824 P.2d 533 (1992). Applying these principles here, we conclude the evidence was sufficient to prove Killingsworth's knowledge beyond a reasonable doubt.

¶10 To prove that Killingsworth trafficked in stolen property, the State had to prove he knew the property he pawned was stolen. RCW 9A.82.050; RCW 9A.82.010(19); *State v. Hermann*, 138 Wn. App. 596, 604, 158 P.3d 96 (2007) ("[T]he legislature clearly intended to prohibit any commercial transaction involving property known to be stolen."); *State v. Michielli*, 132 Wn.2d 229, 236, 937 P.2d 587 (1997) (defendant knowingly trafficked in stolen property because "[k]nowing [certain] items were stolen, he sold them to pawnshops"). The State submitted substantial circumstantial evidence of such knowledge.

¶11 The two people seen near the Jetta before it was stolen fled in the direction of Killingsworth's house. The Haggen's store video tied Killingsworth to the receipt found inside the Jetta and the Haggen's bag and beer can found next to it. The car was heavily damaged and abandoned in a field only a few blocks from Killingsworth's house. Viewed in a light most favorable to the State, this evidence supports inferences that Killingsworth was in the car sometime after 12:40 and was still in it when it was abandoned. Considering the condition of the car and its abandonment in a field, the jury could also infer that Killingsworth knew the car

and its contents were stolen. The evidence was thus sufficient to support the knowledge element of the offense.

## III

¶12 Killingsworth next contends the instructions on the trafficking count relieved the State of its burden of proof. " 'Jury instructions are sufficient when they allow counsel to argue their theory of the case, are not misleading, and when read as a whole properly inform the trier of fact of the applicable law.' " *State v. Gerdts*, 136 Wn. App. 720, 727, 150 P.3d 627 (2007) (internal quotation marks omitted) (quoting *State v. Douglas*, 128 Wn. App. 555, 562, 116 P.3d 1012 (2005)). The "to convict" instruction must contain all elements essential to the conviction and its adequacy is reviewed de novo. *State v. Mills*, 154 Wn.2d 1, 7, 109 P.3d 415 (2005). When reviewing a challenge to the adequacy of a jury instruction, we read it as an ordinary, reasonable juror would. *State v. Noel*, 51 Wn. App. 436, 440-41, 753 P.2d 1017 (1988); *State v. Hanna*, 123 Wn.2d 704, 719, 871 P.2d 135 (1994); *State v. Miller*, 131 Wn.2d 78, 90, 929 P.2d 372 (1997); *State v. Walden*, 131 Wn.2d 469, 477, 932 P.2d 1237 (1997).

¶13 Killingsworth contends the court's "to convict" and "knowledge" instructions relieved the State of its burden to prove that he knew the property he pawned was stolen.[1] The instructions stated in pertinent part:

> To convict the defendant of the crime of trafficking in stolen property in the first degree, as charged in Count II, each of the following elements of the crime must be proved beyond a reasonable doubt:
>
> (1) That on or about the 13th day of July, 2009, the defendant knowingly trafficked in stolen property; and
>
> (2) That the acts occurred in the State of Washington.

Clerk's Papers (CP) at 46 (Instruction 9).

---

[1] A jury instruction that relieves the State of its burden of proof is reversible error. *State v. Pirtle*, 127 Wn.2d 628, 656, 904 P.2d 245 (1995).

A person knows or acts knowingly or with knowledge with respect to a fact when he or she is aware of that fact. It is not necessary that the person know that the fact is defined by law as being unlawful or an element of a crime.

CP at 55 (Instruction 18). Killingsworth claims the "to convict" instruction "failed to require proof that [he] knew the property in question was stolen," Br. of Appellant at 11, and the "knowledge" instruction exacerbated this problem because it "affirmatively indicated . . . that the defendant must be found guilty even if he did not know of the fact that the items were stolen . . . ." Br. of Appellant at 14. We disagree.

¶14 The "to convict" instruction required the jury to find that Killingsworth "knowingly trafficked in stolen property." The most natural reading of the adverb "knowingly," as used in this instruction, is that it modifies the verb phrase "trafficked in stolen property." *See State v. J.M.*, 144 Wn.2d 472, 480-81, 28 P.3d 720 (2001) (most natural reading of statute was that "knowingly" modified verb phrase it preceded). Read this way, "knowingly" modifies both "trafficked" and "stolen." This reading is reinforced by the fact that the instruction tracks the language of the statute.[2] The statute's intent is plain: to criminalize the trafficking of property known to be stolen. Indeed, to read "knowingly" as modifying only the word "trafficked" would lead to the absurd result that a person could be convicted for selling or disposing of property they did not know, or have reason to know,[3] was stolen. No ordinary, reasonable juror would read the instruction this way.

¶15 Contrary to Killingsworth's assertions, the instruction defining "knowingly" does not support a different

---

[2] RCW 9A.82.050(1) states in part that a person "who knowingly traffics in stolen property" is guilty of first degree trafficking in stolen property.

[3] The jury was also instructed on the lesser offense of second degree trafficking in stolen property, which proscribes reckless trafficking in stolen property. RCW 9A.82.055.

conclusion. That instruction stated in part that a person "acts knowingly or with knowledge with respect to a fact when he or she is aware of that fact. *It is not necessary that the person know that the fact is defined by law as being unlawful or an element of a crime.*" CP at 55 (Instruction 18) (emphasis added). For the first time on appeal, Killingsworth contends the emphasized language suggested the jury did not have to find that he knew the trafficked property was stolen.[4] He misreads the instruction. Read correctly, it simply indicates that a defendant need not know that *trafficking in stolen property* is unlawful or an element of a crime.

¶16 In short, we hold that the "to convict" instruction did not relieve the State of its burden of proof. However, while the instruction was adequate, a preferable instruction would be one stating, "That on or about _____, the defendant knowingly sold, transferred, distributed, dispensed, or disposed of property to another person, knowing that the property was stolen." Trial courts may well wish to consider the use of such language in future cases.

## IV

¶17 Last, Killingsworth contends that the prosecutor's closing argument shifted the burden of proof and impermissibly commented on his failure to testify in his defense. He points to several instances where the prosecutor argued that there was no "reasonable explanation" for the events other than Killingsworth's guilt.[5] Because the

---

[4] We assume, without deciding, that this argument may be raised for the first time on appeal. *See State v. Stein*, 144 Wn.2d 236, 240-41, 27 P.3d 184 (2001) (jury instruction that relieves the State of proving any element is a manifest constitutional error that may be reviewed for the first time on appeal); *State v. Williams*, 136 Wn. App. 486, 492-93, 150 P.3d 111 (2007) (if instructions incorrectly define an element of a crime, the State is impermissibly relieved of its burden to prove that the defendant committed all the essential elements of the offense).

[5] The challenged remarks are as follows:

Now, if it wasn't Jason Killingsworth taking [the car] back, and it was another thief, why would they go back to within half a block of the victim's

defense did not object to these remarks below, we will review the alleged misconduct only if it was so flagrant and ill intentioned that no curative instruction could have obviated any prejudice it engendered. *State v. French*, 101 Wn. App. 380, 386-88, 4 P.3d 857 (2000) (absent an objection, even comments touching indirectly on a constitutional right will not be reviewed unless they were so flagrant and ill intentioned as to be incurable); *State v. Smith*, 144 Wn.2d 665, 679, 30 P.3d 1245, 39 P.3d 294 (2001); *State v. Klok*, 99 Wn. App. 81, 85-86, 992 P.2d 1039 (2000). We conclude there was no misconduct and that any improper comments were neither flagrant and ill intentioned nor incurable.

¶18 The prosecutor did not argue or imply that *the defense* had failed to offer other reasonable explanations or comment on Killingsworth's failure to testify. Rather, he simply argued that *the evidence* did not support any other reasonable explanation. A prosecutor is entitled to argue inferences from the evidence and to point out improbabili-

---

house? They might get caught. The victim would see the car. The only *reasonable explanation* for the car being found there is that this guy took it. And you don't have to be smart to commit a crime. He was trying to make it home, didn't make it, left the car there. No one else who was in that car would come back to the location of the scene of the theft. . . . So somebody took this wrecked car, and instead of fleeing, immediately drove it back to that location. This guy. There's no other *reasonable explanation*.

   . . . .

Now, you have to ask yourself, how would he innocently get the iPod and the GPS? Think about this. It's 12:30 at night. Then he buys the beer. So is there a one-armed man in this store? Is he in the store with the one-armed man? Does he buy an iPod? What *reasonable explanation* could there be? Does he buy an iPod in the middle of the night to pawn the next morning for a fairly paltry sum, the iPod and the GPS? It's probably on the exhibit here. The amount of cash given to you, $50. Boy, that must thrill Trista Lemmons that for 50 bucks he pawned this. Somebody sell it to him in the middle of the night? Not the pawner for $50. He wouldn't buy it and pawn it for $50, because he wouldn't buy it for less than that unless you knew it was stolen, wouldn't you? If somebody offers you those two things for something less than $50, you know darn well it's stolen, and that's why you pawn it real fast. You don't buy something to pawn it. Nobody gives it to you in the middle of the night. There's no *reasonable explanation* for why -- for how he would get this without knowing that it was stolen, either buying it too cheaply or stealing it himself or knowing it was stolen in a stolen car and pawning it. That's trafficking.

Report of Proceedings (May 11, 2010) at 171-73 (emphasis added).

ties or a lack of evidentiary support for the defense's theory of the case. *State v. Russell*, 125 Wn.2d 24, 87, 882 P.2d 747 (1994); *State v. Boehning*, 127 Wn. App. 511, 519, 111 P.3d 899 (2005). Moreover, even if the remarks could be interpreted as indirectly commenting on silence or a lack of defense evidence, they could have been easily addressed by a curative instruction from the court.

¶19 Affirmed.

BECKER and ELLINGTON, JJ., concur.

Review denied at 174 Wn.2d 1007 (2012).