

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2014 JAN 21 AM 11: 46

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | DIVISION ONE |
| | ) | |
| Respondent, | ) | No. 69145-7-I |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ABDIRIZAK OMAR MOHAMED, | ) | |
| | ) | |
| Appellant. | ) | FILED: January 21, 2014 |
| | ) | |

DWYER, J. — Abdirizak Mohamed appeals from the judgment entered on a jury's verdict finding him guilty of delivering cocaine in violation of the Uniform Controlled Substances Act.[1] Mohamed was arrested in downtown Seattle as part of a "buy-bust" operation, in which an undercover police officer purchased crack cocaine from a seller on the street. On appeal, Mohamed asserts that the State's evidence failed to prove beyond a reasonable doubt that he sold cocaine to the undercover officer and, therefore, that the evidence was insufficient to support the jury's verdict. Finding that the State presented sufficient evidence to support the verdict, we affirm.

I

On July 28, 2011, Mohamed was arrested for selling crack cocaine to an undercover police officer. On that day, a team of Seattle Police officers were

---

[1] Ch. 69.50 RCW.

working together as part of a narcotics "buy-bust" operation, the objective of which was to purchase narcotics from a seller and then arrest the seller. The team was comprised of the following members: one undercover officer who posed as a drug purchaser, two pairs of arrest officers who were in uniform and on bicycles, and one observation officer in plainclothes who watched the undercover officer while sending radio broadcasts to the arrest officers.

Around noon, the undercover officer, Juan Tovar, approached an individual (hereinafter the seller) on Second Avenue near Pike Street and asked, "You got it?"—a common query used on the street to indicate a desire to purchase narcotics. The seller indicated that he had narcotics for sale and the two began walking westbound toward Second Avenue. Tovar told the seller that he needed "60," meaning that he wanted to purchase $60 worth of cocaine. The seller first confirmed that Tovar wanted to purchase $60 worth and then told him that they were leaving the area because officers on bicycles were around the corner. The two continued walking before stopping near the sidewalk of an open-air parking lot around the corner from where they made initial contact. Meanwhile, the observation officer, Terry Bailey, saw Tovar make initial contact with the seller and watched the two walk together. Bailey radioed a description of the seller to the arrest officers and continued to provide radio updates.

Once the seller and Tovar reached the parking lot, the seller produced a black film canister, out of which he poured several rocks of what appeared to be crack cocaine. He then gave the cocaine to Tovar who, in exchange, gave the seller $60 of "buy money"—bills that had previously been photocopied at the

police precinct. Bailey saw the exchange from across the street and saw Tovar signal that he had purchased narcotics. Bailey then radioed the arresting officers and communicated to them that Tovar had purchased narcotics.

Once the sale was completed, Tovar walked to the other side of Second Avenue while the seller headed north on Second Avenue. When the seller was approached by two of the arrest officers, he ran down an alley, and Tovar temporarily lost sight of him; only seconds thereafter, Tovar saw him reappear in the same parking lot in which the sale was made, at which point Mohamed was arrested as the suspected seller. Although Tovar remained in his position across the street from the arrest, he confirmed that Mohamed was the person who had just sold him cocaine. Additionally, Bailey, the observation officer, witnessed the arrest and confirmed that Mohamed was the same person who he had observed exchange items with Tovar.

As Mohamed was being arrested, one of the officers, Officer Norihisa Etoh, saw Mohamed throw money on the ground. Etoh picked up the money Mohamed had discarded: it totaled $60, which was equal to the amount that Tovar paid for the cocaine. Subsequently, Etoh compared the retrieved money to a photocopy of the "buy money" and discovered that the serial numbers matched. Although the officers conducted a routine search at the scene and a strip search of Mohamed at the precinct, neither the black film canister nor any additional crack cocaine was recovered.

Mohamed was charged with delivery of cocaine in violation of the Uniform Controlled Substances Act. Following a jury trial, the jury found Mohamed guilty

3

as charged. The trial court imposed a standard range sentence of 12 months and one day of incarceration.

Mohamed appeals.

II

Mohamed contends that his conviction should be reversed. This is so, he asserts, because the State failed to prove beyond a reasonable doubt that he was the individual who delivered the cocaine to Officer Tovar. We disagree.

The State charged Mohamed for violating RCW 69.50.401, which makes it illegal for an individual to deliver a controlled substance, such as cocaine. The State was required to prove each element of the charged crime beyond a reasonable doubt, including Mohamed's identity and presence at the scene of the crime. State v. Alvarez, 128 Wn.2d 1, 13, 904 P.2d 754 (1995); City of Bellingham v. Struthers, 109 Wn. App. 864, 868, 38 P.3d 1021 (2001).

"Evidence is sufficient if, when viewed in a light most favorable to the State, it permits any rational trier of fact to find the elements of the crime beyond a reasonable doubt." State v. Killingsworth, 166 Wn. App. 283, 286-87, 269 P.3d 1064, review denied, 174 Wn.2d 1007 (2012); accord State v. Green, 94 Wn.2d 216, 221, 616 P.2d 628 (1980). In reviewing a claim of insufficient evidence, we admit the truth of the evidence and "all reasonable inferences that can be drawn from that evidence." Killingsworth, 166 Wn. App. at 287. Additionally, "we must defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." Killingsworth, 166 Wn. App. at 287.

Mohamed first asserts that because Officer Tovar "was not present at the

location of the arrest" and because he "only observed the arrest . . . from the opposite side of Second Avenue—a distance of approximately five lanes of traffic," his identification was insufficient to convict Mohamed. However, Tovar testified that he identified the seller as Mohamed, notwithstanding the fact that he was observing from across Second Avenue. Furthermore, Officer Bailey testified that he identified the seller as Mohamed. Viewed in the light most favorable to the State, Tovar's and Bailey's eyewitness identifications would allow a rational trier of fact to conclude, beyond a reasonable doubt, that Mohamed delivered cocaine to Tovar.

Mohamed next asserts that because the officers failed to find certain physical evidence connecting Mohamed with the drug sale, "the strength of Tovar's identification . . . is weakened." Specifically, Mohamed points to the officers' failure to find the black film canister or discarded narcotics at the scene or on Mohamed's person during the subsequent strip search. Mohamed's argument is unavailing. Our task is not to reweigh the evidence, only to determine whether the evidence was sufficient to support the conviction. The trier of fact credited the testimony of the officers, despite their failure to recover the film canister or any discarded cocaine. We will not disturb that decision.

Mohamed finally asserts that because only one officer—Officer Etoh— testified that he saw Mohamed throw money to the ground, whereas several other officers testified that they never saw Mohamed discard anything, the evidence was insufficient to convict. Without deciding whether the testimony does, in fact, conflict, we would necessarily defer to the trier of fact on the issue

of conflicting testimony. Thus, Mohamed's assertion does not provide a basis for relief.

Viewing the evidence in the light most favorable to the State, as we must do in reviewing a claim for insufficiency of the evidence, the evidence was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that Mohamed was the individual who delivered cocaine to Officer Tovar.

Affirmed.

Dwyer, J.

We concur:

Cox, J.