IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 32996-8-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ARTHUR DALE COOPER, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — A jury convicted Arthur Cooper of second degree

burglary, second degree vehicle prowling, and second degree possession of stolen

property. On appeal, he contends that the prosecutor, in closing arguments, improperly

shifted the burden of proof and commented on his right not to testify at trial. Mr. Cooper

also contends that the trial court prohibited him from presenting a meaningful defense by

excluding his hearsay statements made to the victim. Mr. Cooper further contends that he

did not receive effective assistance of counsel. We disagree with his contentions and

affirm.

FACTS

John Gore and Veronica Dawkins shared a home at 4309 Tacoma Avenue South in Tacoma. In the early morning hours of March 28, 2013, Ms. Dawkins woke up and noticed someone in Mr. Gore's pickup truck. The truck was parked behind their house in an area surrounded by a chain-link fence.

Ms. Dawkins saw a person leaning into the truck and rummaging through it. The internal dome light of the truck was on, highlighting the person inside. Ms. Dawkins immediately woke up Mr. Gore and told him what she had seen. Mr. Gore jumped out of bed, taking time only to put on a pair of pants. He headed downstairs and out to the backyard. Ms. Dawkins saw Mr. Gore run out the back door and the man in the truck jump out. The person fled into the alley with Mr. Gore right behind. Ms. Dawkins had not seen this man before.

When Mr. Gore and the man were out of sight, Ms. Dawkins noticed a second person coming out of the garage of the home. The man was moving fast. Ms. Dawkins did not know this man either. At that point, Ms. Dawkins ran to the telephone and called police.

According to Mr. Gore, after Ms. Dawkins woke him, he headed downstairs to the backyard. He looked through the kitchen window on the way out and saw a person

2

rummaging through his truck. The man's body was about one-half to two-thirds inside. To Mr. Gore, it appeared that the man was moving things inside the truck. Mr. Gore saw that the dome light was on, illuminating the man. At trial, Mr. Gore identified the man as Mr. Cooper.

As soon as Mr. Gore got outside, Mr. Cooper jumped out of the truck, tore down the gate to the home, and ran down the alley. Mr. Gore yelled, "'Stop thief.'" 2 Report of Proceedings (RP) at 202. Despite being barefoot, Mr. Gore chased Mr. Cooper many blocks through the neighborhood over several fences and through backyards. Mr. Gore never lost sight of Mr. Cooper. Throughout the incident, Mr. Gore told Mr. Cooper repeatedly that Mr. Cooper was going to jail. According to Mr. Gore, Mr. Cooper said he was sorry for breaking into Mr. Gore's truck.

At one point, Mr. Gore chased Mr. Cooper through the front yard of a house. Walter Larson, a private security guard, was waiting outside the house after responding to a triggered alarm. Mr. Larson heard someone yell for help and to call the police. Shortly thereafter, Mr. Larson heard what sounded like a fence rattling. He turned and saw two men round the corner of the house. One man was chasing another, yelling to call the police. Mr. Larson put a spotlight on the first man, who stopped for a second. The first

man then brushed past Mr. Larson and kept running. Mr. Larson later identified the first man as Mr. Cooper.

Mr. Larson flagged down Tacoma Police Officer Jeffrey Maahs and pointed him in the direction of Mr. Cooper and Mr. Gore. Officer Maahs found Mr. Cooper and Mr. Gore running through the streets. Officer Maahs activated his lights, and the two men stopped and sat on the steps of a nearby home. Mr. Cooper was out of breath and appeared tired and sweaty.

Officer Maahs arrested Mr. Cooper. On the way to the patrol car, Mr. Cooper told Officer Maahs, "'I was stupid and I made a mistake.'" 2 RP at 252. Officer Maahs brought Mr. Cooper to Pierce County jail for booking.

Tacoma Police Officer Brian Hudspeth also responded. When he arrived, Officer Maahs was in the process of detaining Mr. Cooper, who was lying against some steps and fully out of breath. Mr. Gore was also out of breath and sweating. Officer Hudspeth gathered information from Mr. Gore, and the pair then walked back to the Gore residence. While there, Officer Hudspeth gathered information from Ms. Dawkins. He also looked through the kitchen window mentioned by Mr. Gore and noted that he could see the truck from the window.

4

Officer Hudspeth and Mr. Gore examined the truck. Officer Hudspeth noticed that both doors were ajar. Mr. Gore usually did not lock his truck doors. However, he knew the doors to the truck were shut after he parked it and the fence gates were closed. When Officer Hudspeth fully opened the door to the truck, he saw a large pile of objects on the front seat. Mr. Gore explained that the items were previously in the backseat. Items in the truck included several GPS[1] units, some photography equipment, a tripod, and miscellaneous electronics. Mr. Gore also noticed that his glove box had been rifled through.

Officer Hudspeth described the placement of the items in the front seat as "staging." 3 RP at 278. Based on his years of responding to burglaries, Officer Hudspeth explained at trial that "staging" is when a perpetrator goes through the house or car, gathers all the items he wants to take, and puts those items in a pile. Once the perpetrator is ready to leave, he can quickly pick up the pile of items on his way out.

Mr. Gore recalled that the door to his garage was latched earlier in the day. However, after returning to his house with Officer Hudspeth, the door appeared unlatched. Officer Hudspeth saw that the walk-in door to the garage was fully open.

---

[1] Global positioning system.

Officer Hudspeth and Mr. Gore walked through the garage and determined that nothing appeared to be missing. The same was true for the truck.

Meanwhile, Officer Maahs remained at the jail with Mr. Cooper. During the booking process, corrections officers searched Mr. Cooper's wallet. Inside the wallet, they found a debit card bearing the name of Amanda Dillard. Officer Maahs collected the card and booked it into evidence.

Officer Maahs contacted Ms. Dillard and her husband, Jason Dillard, about the debit card. Ms. Dillard's card was stolen when someone broke into Mr. Dillard's truck less than two months earlier and took Mr. Dillard's wallet. The debit card was inside the wallet. The Dillards' truck was located in the alley behind the Dillard house. The Dillard house and the Gore house are about a block and a half apart.

The Dillards discovered that someone used the card at a business located within a three mile radius of their home after the card was stolen. Neither of the Dillards gave Mr. Cooper or anyone else permission to possess Ms. Dillard's debit card. The Dillards did not know Mr. Cooper. Mr. Cooper did not contact the Dillards to return the stolen card.

Mr. Cooper was charged by amended information with residential burglary and second degree vehicle prowling for breaking into Mr. Gore's fenced yard and truck, and second degree possession of stolen property for possessing Ms. Dillard's debit card. The

6

charges were tried to a jury. At the conclusion of the State's case, Mr. Cooper moved to dismiss all counts for insufficient evidence. The trial court granted his motion as to the charge of residential burglary but allowed the State to submit the count to the jury on the lesser charge of second degree burglary. The court denied Mr. Cooper's motion to dismiss the remaining counts.

A jury found Mr. Cooper guilty of second degree burglary, second degree vehicle prowling, and second degree possession of stolen property. Mr. Cooper's extensive prior criminal history resulted in an offender score of 9+. The court sentenced Mr. Cooper to 55 months for the burglary and 25 months for the possession of stolen property, to run concurrently.

Mr. Cooper appeals. He contends that a new trial is warranted because of prosecutorial misconduct during closing arguments and ineffective assistance of counsel. He also maintains that the trial court precluded him from presenting a meaningful defense by excluding certain hearsay statements.

## ANALYSIS

*A.    Whether the prosecutor's comments improperly shifted the burden of proof*

To establish prosecutorial misconduct, a defendant must show that the prosecutor's statements were improper and, as a result, prejudicial. *State v. Dhaliwal*, 150 Wn.2d 559,

578, 79 P.3d 432 (2003). For improper statements that were followed by a proper objection, a prosecutor's statements are prejudicial if the statement had a substantial likelihood of affecting the jury's verdict. *State v. Emery*, 174 Wn.2d 741, 760, 278 P.3d 653 (2012).

However, "[i]f the defendant did not object at trial, the defendant is deemed to have waived any error, unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *Id.* at 760-61. "Under this heightened standard, the defendant must show that (1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" *Id.* at 761 (quoting *State v. Thorgerson*, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)). "Reviewing courts should focus less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured." *Id.* at 762. A proper jury instruction generally cannot cure a statement that has an inflammatory effect. *Id.* at 763. "Any allegedly improper statements should be viewed within the context of the prosecutor's entire argument, the issues in the case, the evidence discussed in the argument, and the jury instructions." *Dhaliwal*, 150 Wn.2d at 578.

8

In closing arguments, prosecutors are allowed latitude to argue the facts in evidence and reasonable inferences from the facts. *Id.* at 577. However, they are not permitted to make prejudicial statements that are not sustained by the record. *Id.* Nor may a prosecutor's argument shift the burden of proof to the defendant. *Thorgerson*, 172 Wn.2d at 453. "A prosecutor generally cannot comment on the defendant's failure to present evidence because the defendant has no duty to present evidence." *Id.*

"Remarks of the prosecutor, even if they are improper, are not grounds for reversal if they were invited or provoked by defense counsel and are in reply to his or her acts and statements, unless the remarks are not a pertinent reply or are so prejudicial that a curative instruction would be ineffective." *State v. Russell*, 125 Wn.2d 24, 86, 882 P.2d 747 (1994). A prosecutor can argue that the evidence does not support the defense theory; a prosecutor is entitled to make a fair response to defense arguments. *Id.* at 87.

The mere mention that a defendant is lacking evidence does not constitute prosecutorial misconduct or shift the burden of proof to the defense. *State v. Jackson*, 150 Wn. App. 877, 885-86, 209 P.3d 553 (2009). A prosecutor is entitled to point out a lack of evidentiary support for a defendant's theory of the case. *State v. Killingsworth*, 166 Wn. App. 283, 291-92, 269 P.3d 1064 (2012).

Mr. Cooper contends that the prosecutor urged the jury to presume Mr. Cooper knew the card was stolen because he possessed the card. Thus, according to Mr. Cooper, the prosecutor was relieved of her constitutionally mandated burden of proving the element of knowledge beyond a reasonable doubt. Mr. Cooper did not object to the challenged statement at trial.

The prosecutor's challenged statement is set forth below:

> One of the other elements for possession of stole[n] property is that the card was being withheld from the true owner, from Mrs. Dillard, and it definitely was being withheld from her. She didn't know the defendant. Sergeant Dillard doesn't know the defendant. Neither of them gave the defendant permission to have the debit card. Neither of them even knew that the defendant had the debit card, and the defendant had it in a wallet, in a pocket, on his person, so there's no way that if the Dillards had walked by him on the street that they would have known he had it. He was definitely withholding it from the Dillards,
>
> And the incident occurred in the state of Washington, specifically, again, in the City of Tacoma.
>
> So the only issue in this particular charge is whether the defendant knew that the card was stolen. Again, we're now looking at circumstantial evidence. We're looking at the fact that the debit card was in the name of Amanda Dillard, which was clearly on the card, and you will see that when you take it back into the jury room, that the defendant is not Amanda Dillard, that the defendant is not known by either of the Dillards. One could conclude that he doesn't know them.
>
> And when you look at the "knowledge" instruction, which is Instruction No. 18, it basically says that the individual knew or reasonably could have known that the card was stolen. And you reasonably would know that the card was stolen because you're not entitled to it. And keep in mind that the Dillards live basically about a block away from where Mr.

> Gore lives. . . . Yes, we're talking about two different dates, but they're pretty close to each other.
> These are the facts that the State would ask you to consider.

3 RP at 362-64.

Defense counsel during closing arguments noted that there was no evidence whatsoever that Mr. Cooper had anything to do with the theft of the card and also no evidence that Mr. Cooper would have known or did know it was stolen. Defense counsel said that people find things all the time. Counsel then gave examples of people who lost items, reporting that sometimes the items were turned in and sometimes not.

In rebuttal the prosecutor responded to defense counsel's argument that people find things all the time and hopefully turn them in. Her response was that there was no evidence that Mr. Cooper turned the card in. The prosecutor stated, "There is no way that either [of] the Dillards would have known that the defendant had this card, and there is no reason for him to have kept the card except for the fact that it was stolen. There's no evidence that he turned it in. . . . It is reasonable to conclude that the defendant knew or should have known that it was stolen." 3 RP at 368.

When taken in context, the prosecutor in closing argument did not attempt to relieve the State of proving the element of knowledge. Instead, the prosecutor identified the evidence that the jury could use to reasonably conclude that Mr. Cooper had

11

knowledge. In her closing statement, the prosecutor addressed the knowledge element of the charged crime, recited the jury instruction for the knowledge element, and provided circumstantial evidence that would support a finding of knowledge, including the fact that Mr. Cooper was not entitled to have the card. This was not burden shifting but was identifying circumstantial evidence in the record to support the prosecution's theory.

Burden shifting did not occur in the prosecutor's rebuttal statements either. The prosecutor simply responded to the defense argument that the stolen property could be in a person's possession because they found it. The prosecutor noted there was no evidence that Mr. Cooper found the card, and that fact can be used to support a finding of knowledge. The prosecutor did not tell the jury to presume knowledge simply because Mr. Cooper possessed the stolen debit card.

The prosecutor set forth the jury instructions and circumstantial evidence that the jury could use to find that Mr. Cooper had knowledge. "Although bare possession of recently stolen property will not support the assumption that a person knew the property was stolen, that fact plus slight corroborative evidence of other inculpatory circumstances tending to show guilt will support a conviction." *State v. Ford*, 33 Wn. App. 788, 790, 658 P.2d 36 (1983). "Knowledge may not be presumed because a reasonable person would have knowledge under similar circumstances, but such knowledge may be

12

inferred." *Id.* Here, the fact that Mr. Cooper had the stolen debit card with Ms. Dillard's name on it yet made no attempt to return it was circumstantial evidence to support an inference that he knew the card was stolen. The remarks of the prosecutor were not improper.

B.      *Whether the prosecutor impermissibly commented on Mr. Cooper's right not to testify*

Mr. Cooper contends that the prosecutor improperly commented on his right not to testify. Mr. Cooper challenges the prosecutor's remark in rebuttal that Mr. Cooper did not have a legitimate reason to be in Mr. Gore's backyard. Mr. Cooper contends that because he was the only person who could testify to why he was in the backyard, the prosecutor's statement drew attention to the fact that Mr. Cooper did not testify. Mr. Cooper did not object at trial.

The prosecutor's statement was not improper but instead was a response to Mr. Cooper's theory of the case presented in defense counsel's closing argument. Defense counsel argued that there were legitimate reasons why a person may be out and about in the evening, pointing out that a person on a bicycle was seen riding on the night of the incident. Defense counsel argued that it was just as reasonable to believe that Mr. Cooper came across the truck in the middle of the night and observed the odd circumstances. Counsel argued that while some people keep going, others become involved and look into

13

the circumstances, and for instance, call 911 or pound on doors. He suggested that this could be Mr. Cooper's situation. Counsel added, "There is no doubt he is in the wrong place at the wrong time, but I would submit to you that to leap to the conclusion that he's there with criminal intent, criminal knowledge, is more than just reasonably inferring that he's there with the intent to commit a crime." 3 RP at 378.

In rebuttal, the prosecutor stated,

> There is no testimony that has been presented in this case that you can conclude that the defendant had any legitimate reason to be in Mr. Gore's fully fenced-in back yard in the early morning hours of March 28th, 2013. What we have is more than sufficient evidence to show that the reason the defendant was there was for an intent to commit a crime, and that crime was theft.
>
> We know the property had been moved from the back to the front seat. We know the defendant was found rummaging in that pickup truck. There was no reason for him to have done any of those if he was there for some legitimate reason, but the State contends that, based upon all the evidence in this case, he wasn't there for any legitimate reason.

3 RP at 386-87.

The prosecutor's rebuttal argument—that no testimony was presented in the case to conclude that Mr. Cooper had a legitimate reason for being in the yard—was in direct response to Mr. Cooper's argument that he simply wanted to help and was in the wrong place at the wrong time. The prosecutor's rebuttal statement was not improper.

14

C.   *Whether excluding hearsay precluded Mr. Cooper from presenting a meaningful defense*

A trial court's decision regarding the admission of evidence is reviewed for an abuse of discretion. *State v. Thomas*, 150 Wn.2d 821, 856, 83 P.3d 970 (2004), *abrogated in part on other grounds by Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). "[T]he trial court's decision will be reversed only if no reasonable person would have decided the matter as the trial court did." *Id.* "Proper objection must be made at trial to perceived errors in admitting or excluding evidence and failure to do so precludes raising the issue on appeal." *Id.*

Mr. Cooper contends that the trial court infringed on his right to present a defense by excluding Mr. Gore from testifying about two statements made by Mr. Cooper to Mr. Gore. The trial court excluded these statements as hearsay. Mr. Cooper sought to admit his two "admissions" to Mr. Gore—that he did not take anything and that the truck was open.

The Sixth Amendment provides, in part, "In all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor." U.S. CONST. amend. VI. The Sixth Amendment right of compulsory process is applicable to the states through the Fourteenth Amendment. *Thomas*, 150 Wn.2d at 857. Due process provides a defendant the right to offer witnesses, to present a defense, and to

15

present the defendant's and prosecution's versions of the facts to the jury for determination of the truth. *Id.* The right to compulsory process is not absolute. *Id.*

Hearsay is not admissible at trial except as provided by rule or statute. ER 802. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c).

In *Thomas*, the defendant contended that the trial court should have allowed him to cross-examine a police officer about a witness's out-of-court identification of a man, without having to call the witness. 150 Wn.2d at 859. The trial court excluded the statement unless the witness testified because it considered the statement hearsay. *Id.* The appeals court upheld the trial court's ruling, finding that Mr. Thomas did not object and could have called the witness to testify to what she saw, but declined to do so. *Id.* Thus, Mr. Thomas waived a hearsay objection and the ruling did not infringe on his right to present evidence. *Id.*

Here, as in *Thomas*, the trial court did not infringe on Mr. Cooper's right to present evidence to support a defense. Mr. Cooper sought to present his own statements through a witness. The court correctly determined that these statements were hearsay and excluded the testimony. Mr. Cooper was available to testify to his statements but instead exercised his right not to testify at trial. Thus, the consequence of exercising this right

was that his statements to Mr. Gore could not be presented at trial to support his defense, absent an exception to the hearsay rule.[2]

Mr. Cooper contends on appeal that the statements should have been allowed under ER 803(a)(3) to show his state of mind. However, he did not pursue this exception at trial. He waived the right to raise the issue on appeal.

D.      *Whether Mr. Cooper's counsel was ineffective*

To demonstrate ineffective assistance of counsel, a defendant must show (1) defense counsel's representation was deficient, i.e., it fell below an objective standard of reasonableness based on consideration of all the circumstances, and (2) defense counsel's deficient representation prejudiced that defendant, i.e., there is a reasonable probability that except for counsel's unprofessional errors, the result of the proceeding would have been different. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995).

In a claim of ineffective assistance of counsel based on a failure to challenge the admission of evidence, a defendant must show (1) an absence of legitimate strategic or tactical reasons supporting the challenged conduct, (2) that an objection to the evidence

---

[2] An admission by a party opponent is not hearsay if the statement is offered *against* the party. ER 801(d)(2). This rule does not apply to Mr. Cooper's statements because he offered his statements to *support* his defense.

17

would have likely been sustained, and (3) the result of the trial would have been different had the evidence not been admitted. *State v. Sexsmith*, 138 Wn. App. 497, 509, 157 P.3d 901 (2007).

Mr. Cooper's counsel was not deficient for failing to object during closing argument. The prosecutor's statements were proper so there was no need for defense counsel to object.

As for Mr. Cooper's out-of-court statements, even if we were to conclude that counsel was deficient for failing to argue an ER 803(a)(3) hearsay exception, the result of the trial would not have been different with the admission of the evidence. The admission of the two statements that Mr. Cooper did not take anything and that the truck was open was cumulative evidence. Mr. Gore testified that nothing was missing from the truck and that he normally leaves his truck unlocked.

Also, Mr. Cooper's out-of-court statements did not negate the element of intent, which was the primary challenged element for the vehicle prowling and burglary charges. For vehicle prowling, a reasonable juror could still infer that Mr. Cooper had the intent to steal when he was found rummaging through the truck, even though the truck was unlocked and he did not manage to take anything. Similarly for second degree burglary, a reasonable person could conclude that Mr. Cooper unlawfully entered Mr. Gore's fenced

18

backyard without permission, regardless if the truck was unlocked and Mr. Cooper did not take items from the truck. The admissions of the two out-of-court statements would not have produced a different result. Mr. Cooper's ineffective assistance of counsel challenge fails.

## STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

In his statement of additional grounds, Mr. Cooper contends that his counsel was ineffective for failing to challenge Mr. Gore's and Ms. Dawkins's testimonies that the backyard was fully fenced.[3] Counsel was not defective for failing to further question these witnesses on this issue. Rather, this decision not to ask such questions was likely strategic. Both Mr. Gore and Ms. Dawkins testified that the yard was fenced. Had defense counsel further inquired into this subject, the witnesses would have had a further opportunity to repeat their testimony. Instead of challenging this evidence, defense counsel's tactic was to focus the jury on the intent element for second degree burglary, which was a harder element for the State to establish.

---

[3] The charge for second degree burglary required the jury to find in part that Mr. Cooper remained unlawfully in a building other than a dwelling. The jury was instructed that a building, in addition to its ordinary meaning, includes a fenced in area. "Fenced area . . . includes an area that is completely enclosed either by fencing alone or a combination of fencing and other structures." Clerk's Papers at 67.

19

Mr. Cooper also challenges the trial court's decision not to grant a drug offender sentencing alternative (DOSA). Mr. Cooper contends that the basis of the court's refusal to impose a DOSA sentence was improper. Here, the court refused to impose a DOSA sentence because Mr. Cooper continued to believe in his own innocence.

The DOSA program authorizes trial judges to sentence eligible, nonviolent offenders to a reduced sentence, substance abuse treatment, and increased supervision in an attempt to help the offender recover from addiction. *State v. Grayson*, 154 Wn.2d 333, 337-38, 111 P.3d 1183 (2005). Whether to give a DOSA is a decision left to the trial judge's discretion. *Id.* at 335. The trial court's decision will not be disturbed on appeal unless the court's decision is "'manifestly unreasonable or based on untenable grounds or untenable reasons.'" *State v. Dye*, 178 Wn.2d 541, 548, 309 P.3d 1192 (2013) (quoting *In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997)).

Generally, the DOSA sentencing decision is not reviewable. *Grayson*, 154 Wn.2d at 338 (citing RCW 9.94A.585(1)). However, an offender may always challenge the procedure by which a sentence is imposed. *Id.* Although no defendant is entitled to an exceptional sentence below the standard range, every defendant is entitled to ask the trial court for such a sentence "and to have the alternative actually considered." *Id.* at 342. When a trial court categorically refuses to consider a DOSA, or refuses to consider a

20

DOSA for a class of offenders, the trial court fails to exercise discretion and is subject to reversal. *Id.*

Here, the trial court considered imposing a DOSA sentence but determined that it was not appropriate in Mr. Cooper's situation. While the court had not seen a DOSA evaluation, the court noted that a DOSA was not appropriate because Mr. Cooper denied committing the crimes.

The efficacy of DOSA is largely dependent on a person's being truthful and cooperative in his or her treatment. A defendant is entitled to require the State to prove his or her guilt beyond a reasonable doubt. However, once a jury has made the determination, a court may consider a defendant's continued protestation of innocence as an indicator militating against a successful DOSA outcome. *State v. Hender*, 180 Wn. App. 895, 902, 324 P.3d 780 (2014). We conclude that the trial court's decision was not manifestly unreasonable.

## APPELLANT'S MOTION TO STAY CONSIDERATION AND TO FILE SUPPLEMENTAL BRIEFING

Mr. Cooper filed a motion to stay consideration of his case so to allow supplemental briefing. He filed his motion the day prior to this panel's consideration of his case. The basis of his motion is the Supreme Court's recent decision of *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015).

21

There, two cases were discussed. In each, the trial court imposed LFOs (legal financial obligations) without making an individual determination of the defendant's ability to pay. The *Blazina* court held that RAP 2.5(a) generally gives appellate courts discretion to refuse to review errors that were not raised to the trial court. *Id.* at 834-35. The *Blazina* court determined that "[n]ational and local cries for reform of the broken LFO [legal financial obligations] systems demand that this court exercise its RAP 2.5(a) discretion and reach the merits of this case." *Id.* at 835. The *Blazina* court ultimately held, "[T]he sentencing judge must consider the defendant's individual financial circumstances and make an individualized inquiry into the defendant's current and future ability to pay[, and] the record must reflect this inquiry." *Id.* at 837-38.

Here, Mr. Cooper did not raise the LFO issue before the trial court or in his assignments of error on appeal. We, therefore, exercise our discretion under RAP 2.5(a) and deny his request to file a supplemental brief contesting imposition of LFOs. By implication, we also deny his request to stay consideration of his case. Nevertheless, we deem it most consistent with the policy announced in *Blazina* to authorize Mr. Cooper to raise this issue before the trial court.

We therefore affirm on all issues, but we remand to the trial court for the limited purpose of complying with *Blazina*.

No. 32996-8-III
*State v. Cooper*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____
Korsmo, J.

_____
Fearing, J.

23