# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 75037-2-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| BLAINE W. WHITEHEAD, | ) | |
| | ) | |
| Appellant. | ) | FILED: June 20, 2016 |
| | ) | |

LEACH, J. — A jury convicted Blaine Whitehead of burglary in the second degree. Whitehead challenges the sufficiency of the evidence supporting his conviction. He also contends that trial counsel provided ineffective assistance by failing to object to testimony and closing remarks that impermissibly commented on his right to silence. Sufficient evidence supports Whitehead's conviction. Because the State did not impermissibly comment on Whitehead's silence, he fails to establish deficient performance or prejudice. We affirm.

## FACTS

The State charged Blaine Whitehead with burglary in the second degree, alleging that he committed a burglary at the Christ Lutheran Church in Belfair, Washington.

At trial, the pastor of the Belfair church testified that when she arrived at church for Sunday services on September 29, 2013, she saw an unlocked door and signs of a forced entry. She also discovered that several items, including

laptop computers, were missing. The pastor viewed video surveillance footage from the previous day and called the Mason County Sheriff's Office. During the pastor's testimony, the jury viewed still images from the church's video surveillance system. These photos showed a man, who was not a member of the congregation, walking around inside the church the previous afternoon, when the church had been locked and closed to the public. The footage also showed the man carrying a black bag.

Deputy Sheriff Larry Ellis responded to the reported robbery. He met the pastor at the church and viewed the video footage from the previous day. Without describing what steps he took, Deputy Ellis testified that his "investigation" led him to a residence on NE Cherokee Lane. When he knocked at the residence, a man partially opened the door. Deputy Ellis testified that he was "95%" certain the man who opened the door was the same person he had just seen on the church's video footage. The person identified himself as Mark Dillinger. Deputy Ellis told the man he wanted to speak with him, but the man said he was not the homeowner and shut the door. The deputy continued to knock but received no response.

When the deputy returned to the residence the following day, a different man, Courtney Burrell, opened the door. Burrell told the deputy that his friend Marlin Schauer lived at the house with his uncle, Billy Whitehead. Burrell said

that no one named Mark lived at the residence. Deputy Ellis retrieved a photograph of Blaine Whitehead from a database and showed it to Burrell, who confirmed that the person in the photograph was his friend's Uncle Billy. When he viewed the still photographs from the church's video surveillance system, Burrell said the person in the church resembled Whitehead, but he could not definitively identify him. The police did not recover any of the church's stolen property.

The jury convicted Whitehead as charged. He appeals.

## SUFFICIENCY OF THE EVIDENCE

Due process requires the State to prove, beyond a reasonable doubt, every element of the crime charged.[1] Sufficient evidence supports a conviction if, after viewing it in the light most favorable to the State, a rational trier of fact could find each element of the crime beyond a reasonable doubt.[2] We defer to the jury on questions of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence.[3]

For the jury to convict Whitehead of the charged burglary, it had to find beyond a reasonable doubt that he (1) entered or remained unlawfully in a building, (2) with intent to commit a crime therein.[4]

---

[1] In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970).
[2] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).
[3] State v. Killingsworth, 166 Wn. App. 283, 287, 269 P.3d 1064 (2012).
[4] RCW 9A.52.030(1).

According to Whitehead, there was no direct evidence that he was the person who entered the church and stole property. He claims that the strongest conclusion the jury could reach from the evidence is that he resembled the person who committed the crime. Whitehead compares this case to State v. Mace,[5] where the only evidence connecting the defendant to the residential burglary was a bag and receipt bearing the defendant's fingerprints found near an ATM[6] where stolen bank cards were used.

We disagree. The surveillance photographs provided direct evidence of the burglary. And, unlike Mace, Whitehead's conviction was not based solely on proof of possession of recently stolen property. Viewed in the light most favorable to the State, the photographic evidence was sufficient to allow the jury to determine that Whitehead, who appeared in court, was the same person depicted in the still photographs and video footage. The persuasiveness of that evidence is a question for the trier of fact—here, the jury.[7]

Other evidence corroborated the photographic evidence. Deputy Ellis encountered the man at the Cherokee Lane residence the day after the burglary and testified that the person he spoke to was unquestionably the same person in the video footage. And Burrell testified that only Whitehead and Schauer lived at

---

[5] 97 Wn.2d 840, 842-43, 650 P.2d 217 (1982).

[6] Automated teller machine.

[7] See State v. Walton, 64 Wn. App. 410, 415-16, 824 P.2d 533 (1992), abrogated on other grounds by In re Pers. Restraint of Cross, 180 Wn.2d 664, 681 n.8, 327 P.3d 660 (2014).

the residence and that Schauer was working out of town at the time of the burglary. A rational trier of fact could find, based on this evidence, that Whitehead was the person who committed the crime.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Whitehead contends that trial counsel rendered ineffective assistance by failing to object when the State (1) elicited testimony that Whitehead refused to speak to Deputy Ellis and (2) urged the jury to infer guilt from his exercise of the right to silence.

The Fifth Amendment of the United States Constitution and article I, section 9 of the Washington Constitution "guarantee a criminal defendant the right to be free from self-incrimination, including the right to silence."[8] The right to silence applies in both prearrest and postarrest situations.[9] The State impermissibly comments on silence when it uses the defendant's silence "as substantive evidence of guilt or to suggest to the jury that the silence was an admission of guilt."[10] An impermissible comment on silence requires more than merely referencing the silence.[11] We must consider "'whether the [State] manifestly intended the remarks to be a comment on that right.'"[12]

---

[8] State v. Knapp, 148 Wn. App. 414, 420, 199 P.3d 505 (2009).
[9] State v. Easter, 130 Wn.2d 228, 243, 922 P.2d 1285 (1996).
[10] State v. Lewis, 130 Wn.2d 700, 707, 927 P.2d 235 (1996).
[11] State v. Slone, 133 Wn. App. 120, 127, 134 P.3d 1217 (2006).
[12] State v. Burke, 163 Wn.2d 204, 216, 181 P.3d 1 (2008) (quoting State v. Crane, 116 Wn.2d 315, 331, 804 P.2d 10 (1991)).

To prove ineffective assistance of counsel, an appellant must show that (1) counsel provided representation so deficient that it fell below an objective standard of reasonableness and (2) the deficient performance prejudiced him.[13] A defendant shows prejudice when there is a reasonable probability that but for counsel's errors, the result of the trial would have been different.[14] An ineffective assistance of counsel claim fails if a defendant does not establish either prong.

Deputy Ellis testified that in response to his request to speak to the person who answered the door, the person "closed the door and went back inside the residence." The prosecutor referred to this encounter in closing argument, saying that "when Deputy Ellis basically says we have something to discuss, the person backs off into the house . . . and doesn't—doesn't talk anymore."

Neither Deputy Ellis's testimony nor the prosecutor's remark amounted to an impermissible comment on Whitehead's silence. Deputy Ellis did not directly refer to Whitehead's silence when he described the man's retreat into the residence. Deputy Ellis did not say that he told the man that he wanted to discuss a burglary. Neither did he testify that Whitehead refused to answer any questions. The record does not show that the State intentionally elicited testimony about Whitehead's silence.

---

[13] Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); State v. Thomas, 109 Wn.2d 222, 226, 743 P.2d 816 (1987).

[14] State v. Hendrickson, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

The prosecutor's reference to silence in closing argument was isolated and brief. He focused his argument on Deputy Ellis's certainty that the person who answered the door was the same person he had just viewed in surveillance footage. He also emphasized the fact that only Whitehead and Schauler lived at the residence at that time and that the person who answered the door provided a false name. The prosecutor did not ask the jury to use the evidence of silence as substantive evidence of guilt or to infer an admission of guilt. Under these circumstances, Whitehead fails to demonstrate that counsel's performance was deficient or that he was prejudiced. His ineffective assistance of counsel claim fails.

Affirmed.

WE CONCUR: